CONTRACTOR'S SAND AND
GRAVEL, INC.,
Petitioner,

v.

FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION
and Secretary of Labor, Respondents.

No. 98–1480.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1999.

Decided Jan. 7, 2000.

C. Gregory Ruffennach argued the cause for petitioner. With him on the briefs were Ronald E. Meisburg and William K. Doran.

Jack Powasnik, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief was W. Christian Schumann, Counsel. Norman Michael Gleichman, General Counsel, entered an appearance.

Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Contractor's Sand and Gravel, Inc. ("CSG") petitions for review of a Federal Mine Safety and Health Review Commission ("FMSHRC") decision vacating an Administrative Law Judge's ("ALJ") award of attorneys fees and expenses against the Secretary of Labor arising out of an underlying proceeding in which CSG had successfully defended against citations and civil penalty assessments for alleged violations of Mine Safety Regulations. The Commission responds both that it has the jurisdiction to review the award and that the award was improper because the conduct of the Secretary in the underlying litigation was "substantially justified." While we agree with the Commission that it had jurisdiction to review the award, we agree with petitioner that the conduct of the Department of Labor in the underlying Mine Act proceedings was not substantially justified. Therefore, for the reasons more fully set out below, we allow the petition for review.

## I. Underlying Proceedings

### A. The MSHA Citations

In March of 1993, Inspector Ann Frederick of the Mine Safety and Health Administration ("MSHA"), purporting to act under the Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. § 801

*et seq.,* issued numerous citations against petitioner Contractor's Sand & Gravel, Inc. and its general manager Eric Shoonmaker. While most citations were dismissed or otherwise disposed of, the one underlying the present proceeding resulted in substantial administrative litigation. This citation charged violation of 30 C.F.R. § 56.12025, which requires that "[a]ll metal enclosing or encasing electrical circuits shall be grounded or provided with equivalent protection." The citation specifically alleged that the grounding system employed by petitioner for its crusher was not in compliance with law and constituted "an unwarrantable failure by [the] operator to comply with the standards" of the Mine Act. *Secretary of Labor v. Contractors Sand and Gravel Supply, Inc.,* 18 F.M.S.H.R.C. 384, 385 (ALJ 1996) (quoting citation). The citation did not allege that the device was not grounded, but only that the method of grounding—that is the use of the frame of the equipment as the conduit to the ground—"has been forbidden for over fifteen years." *Id.* In fact, neither section 56.12025, nor the Secretary's regulatory definition applicable to the grounding requirement of section 56.12025, nor any other statute or regulation forbade frame grounding and never had. The regulatory definition simply defines "electrical grounding" as: "to connect with the ground to make the earth part of the circuit." 30 C.F.R. § 56.2 (1999).

After testing confirmed that its method of grounding complied with the regulatory definition, CSG declined to modify the structure to comply with the Secretary's instructions, and proceeded to contest the citation. A second MSHA inspector issued a closure order closing the entire crushing plant until such time as the crushing operation was properly grounded with a fourth wire. Only after CSG incorporated a second grounding system according to the dictates of the inspectors did MSHA lift the closure order. On May 27, 1993, MSHA assessed a $7,000 civil penalty against CSG and a $6,000 civil penalty against Shoonmaker personally, in con-

trast with the Secretary's average penalty proposal of $66 and previous high penalty proposal of $81. At no time during the entire proceeding did the inspectors or any other emissary of the Secretary conduct any test to determine whether the frame grounding employed by CSG in fact complied with the regulatory definition. CSG and Shoonmaker contested the excessive penalty assessments as well as the underlying violation. The Secretary then initiated civil penalty proceedings against both before the FMSHRC.

In the Mine Act proceeding, the Secretary initially advanced a position similar to the one that Frederick had articulated in the citation, that is, she maintained that 30 C.F.R. § 56.12025 prohibited frame grounding. Specifically, the Secretary alleged:

The grounding system set up by [CSG] did not conform to MSHA standards or to standards recognized in the building and construction industries. The use of feeder and stacker frames as grounding is prohibited by the National Electrical Code....

The use of structural frames as grounding conductors is not recognized by MSHA....

Subsequently, in response to a pre-hearing order by the ALJ, and in apparent recognition that section 56.12025 does not contain any provision forbidding frame grounding, that the regulations have never adopted the National Electrical Code, and that the Secretary's inspectors had never conducted any inspection to determine compliance with the actual requirements of the actual regulatory scheme, the Secretary changed her position and alleged that MSHA would establish a violation of section 56.12025 "by showing that the stacker and crusher conveyor motors were not properly grounded. Specifically ... that these two motors did not have a ground lead or 'fourth wire' ... [leaving] the motors without a proper and effective ground...."

Just as the regulations did not forbid frame grounding, neither did they affirmatively require "fourth wire grounding." Therefore, CSG moved for a summary decision from the ALJ. The Secretary opposed that motion and filed a cross-motion for summary disposition, arguing that a reasonably prudent person would infer the Secretary's contended requirements and prohibitions from the cited sections and that the Secretary's "interpretation" was therefore entitled to "deference."

The ALJ recognized the single issue before him as being whether CSG's use of frame grounding to create a path for the electrical current to the ground violated section 56.12025. He further recognized that the cited regulation did not prohibit frame grounding and that the Secretary had never undertaken any rulemaking to extend an interpretation of the grounding requirement forbidding frame grounding, or conversely requiring some other method. CSG entered the battle of summary decision motions armed with evidence that its method did in fact meet the ground requirement set forth in the regulatory and definitional sections of Part 56. The Secretary came with no evidence whatsoever that the grounding method did not meet the regulatory requirements nor any other evidence that CSG or Shoonmaker had otherwise violated the cited regulations, or any other. There being no dispute as to any material fact, the ALJ entered summary decision in CSG's favor. *See Contractors,* 18 F.M.S.H.R.C. at 389. Specifically, the ALJ found that CSG "complied with the requirement of the cited standard by intentionally grounding the stacker conveyor and crusher discharge conveyor motors by using the stacker and crusher frames as conductors in carrying ground fault current to the earth." *Id.* at 387. The ALJ went on to note that Part 56 "clearly provides that 'electrical grounding means to connect with the ground to make earth part of the circuit.'" *Id.* at 387–88 (quoting 30 C.F.R. § 56.2). As CSG's evidence of compliance with the regulation was uncontested, there was nothing else to be heard. The Secretary did not appeal.

## B. The EAJA Proceedings

After prevailing in every respect in the MSHA proceeding, CSG sought an award of its costs and its fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504. The Secretary resisted the award, asserting that MSHA's position "was substantially justified" as contemplated in 5 U.S.C. § 504(a)(1). The ALJ rejected the substantial justification claim and entered a fees and costs award in favor of CSG. *See Contractor's Sand and Gravel, Inc. v. Secretary of Labor,* 18 F.M.S.H.R.C. 1820 (ALJ 1996). The Secretary appealed the ALJ's award to the Federal Mine Safety and Health Review Commission. On August 22, 1998, the Commission in a 3–to–2 decision reversed the ALJ and vacated his award of attorneys fees and expenses to CSG. *See Secretary of Labor v. Contractors Sand and Gravel, Inc.,* 20 F.M.S.H.R.C. 960 (1998). The present petition brings that decision of the Commission before us for review.

## II. Analysis

The EAJA provides, in pertinent part, that a "prevailing party other than the United States" in "an adversary adjudication" is entitled to an award from the agency that conducted the adjudication of fees and expenses incurred in connection with the proceeding. 5 U.S.C. § 504(a)(1). CSG sought and received an EAJA award from the ALJ. The Administration did not and does not contest CSG's status as a prevailing party, but both before the ALJ and the Commission and now before this court, resisted the award on the basis of further language in section 504(a)(1) that conditions the entitlement of the prevailing party by stating that the award is to be made "unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award un-

just." *Id.* The Secretary argued and the Commission held that the Administration's position was "substantially justified" within the meaning of the EAJA. *See Contractors,* 20 F.M.S.H.R.C. at 967. CSG's petition brings before us the Commission's reversal of the ALJ's award. CSG argues that the Commission had no jurisdiction to review the award of the ALJ, and further that, even if the Commission had jurisdiction, it erred in reversing the ALJ's award. While we reject the petitioner's jurisdictional argument, we agree that the Commission erred on the merits, and therefore allow the petition for review.

### A. The Commission's Jurisdiction

■ Before reaching the merits of CSG's petition, we first consider CSG's argument that the Commission did not have jurisdiction to review the ALJ's determination that the Administration's underlying conduct lacked substantial justification. CSG argues that its view is compelled by the language of 5 U.S.C. § 504(a)(1) to the effect that the Agency is to enter an EAJA award in favor of the prevailing party in an adversary adjudication "unless *the adjudicative officer of the agency finds* that the position of the agency was substantially justified." (emphasis added). CSG argues that this "plain language" commits the substantial justification issue to the ALJ and that the Commission was therefore without authority to review it. The respondents contend that the statute clearly contemplates agency review of the adjudicative officer's decision. We agree.

As respondents point out, although the statute contains the language recited by petitioner, that language does not compel the finality that petitioner attaches to it. In fact, the statute goes on to provide:

> The decision of the adjudicative officer ... shall be made part of the record containing the final decision of the agency and shall include written findings and conclusions and the reason or basis therefor. The decision of the agency on

the application for fees and other expenses shall be the final administrative decision under this section.

5 U.S.C. § 504(a)(3).

As the respondents argue, this language is far more consistent with a congressional contemplation of an administrative law judge decision subject to the normal agency review than it is with an ALJ decision legislatively vested with administrative finality. Concededly, it is true as petitioner argues that the statute could literally encompass a model in which the ALJ's decision would be final on the discrete question of substantial justification, and would then become part of the record upon which the final administrative decision designated in subsection (a)(3) would rest, but in which the other elements of the fee award not committed to the ALJ would be finally determined only by the highest agency decision maker. However, the language is equally consistent with the model forwarded by respondents in which the Commission not only makes the final decision as to all other elements, but reviews along with those elements the substantial justification finding entered by the ALJ in the first instance.

■ Granted, we are not bound to defer to the agency's construction. The rule of *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), does not apply. This is a statute of general application and not one committed to administration by the Commission or the Secretary. We therefore make this choice between or among possible alternatives as a classic question of law committed to the court for decision, not the agency. *See, e.g., Scheduled Airlines Traffic Offices, Inc. v. Dep't of Defense,* 87 F.3d 1356, 1361 (D.C.Cir. 1996). However, without deference, we find the Commission's interpretation to be the more compelling on the jurisdictional question. There is nothing extraordinary about an administrative agency reviewing the findings of its ALJ. Indeed, that is the normal procedure. (It would be so

extraordinary for a finding to be committed to an ALJ without review that CSG has been able to offer no example.) We think it unlikely that if Congress intended to adopt such an extraordinary departure from the norm it would do so by implication. We therefore agree with the Commission that 5 U.S.C. § 504(a)(3) commits to its review the decision of the ALJ.

### B. The Merits

The majority of the Commission in its 3–to–2 decision reversing the ALJ's award of fees to CSG began by faulting the approach of the ALJ in determining whether the Administration's position had been justified. According to the Commission "the judge's failure to *independently* review the Secretary's position in the EAJA proceeding and apply a distinct analysis under the appropriate EAJA standard was erroneous and in itself, precludes affirmance of the judge's determination." *Contractors,* 20 F.M.S.H.R.C. at 968 (emphasis in original). The Commission in this criticism addresses the ALJ's statement that " '[i]n the *underlying* proceeding, I clearly indicated that the Secretary's position was unreasonable.... *I again find* that the Secretary's legal theory was not reasonable and that there was no reasonable connection between the Secretary's legal theory and the undisputed facts.' " *Id.* (quoting *Contractor's,* 18 F.M.S.H.R.C. at 1822 (emphasis added by the Commission)). We would state at the outset that we are a bit baffled by the Commission's approach to its review of the ALJ's decision. The language of the ALJ italicized by the Commission demonstrates on its face that he did precisely what the Commission suggested he had not done. That is, he reviewed for the second time an Administration position he had already found unreasonable and found that it still was. As we have stated before, "[i]n some cases, the standard of review on the merits is so close to the reasonableness standard applicable to determining substantial justification that a losing agency is unlikely to be able to show that its position was sub-

stantially justified." *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 595 (D.C.Cir.1996). In *F.J. Vollmer Co.,* an agency's application of its own regulation had been held to be unreasonable. In the subsequent EAJA review, a district judge concluded that the government sustained its burden of establishing that its action had been substantially justified. We reversed, suggesting that it would be neither surprising nor erroneous that a judge's conclusion at the second stage would be consistent with his conclusion at the first. Just so here.

To say that the Commission erred in its approach to the ALJ's decision under review, does not, of course, answer our question as to whether it erred in the merits review before it and now before us. That review is governed by a principle stated in *Cinciarelli v. Reagan,* 729 F.2d 801 (D.C.Cir.1984): "Once a plaintiff has been shown to be a prevailing party, the burden is on the government to show that its litigation position was substantially justified on the law and the facts." *Id.* at 806. The Commission divided that inquiry into its two component parts and expressly held that "the Secretary's position had a reasonable basis in law," *Contractors,* 20 F.M.S.H.R.C. at 969, and that "the Secretary's position had a reasonable basis in fact," *id.* at 973.

The Commission first expressed the reasonable proposition that "[w]e begin our analysis of whether the Secretary's position was substantially justified by examining whether her position had a reasonable basis in law." *Id.* at 969. Unfortunately, the Commission's application of its approach was not equal to the correctness of its statement. The Commission's determination that the Secretary's position had a reasonable basis in law is based entirely on an analysis which examines the purpose of the regulations in terms of the overriding objective of safety in the mine, and then goes on to conclude that the Secretary, by presenting evidence that frame grounding was not the safest way to

ground equipment, therefore had established a substantial justification in law. This erroneous application echoes the fundamental error of the MSHA's acts in the underlying controversy, and we might add recreates the fundamental error about which we have cautioned this and other agencies on prior occasions in other contexts.

What the Secretary successfully defended before the Commission and what we reject here is precisely the same sort of arbitrary overreach we previously rejected in *Secretary of Labor v. FMSHRC,* 111 F.3d 913 (D.C.Cir.1997). In that case, the Administration had sought to enforce a citation against a mine operator for collections of trash outside the active workings of a mine as violative of a regulatory scheme which by its terms "forbid[ ] accumulations of combustible materials in active workings." *Id.* at 918 (citing 30 C.F.R. § 75.400). Nothing about the rules promulgated by the Secretary forbade the outside accumulation by the regulated mine. The Commission, acting far more lawfully than in the case before us, rejected the Secretary's attempt to penalize accumulations not violating the rules. Before the Commission and before us, the Secretary urged the dangerousness of collections of trash outside active workings. Although we reversed a portion of the Commission's decision on other grounds, we upheld its rejection of the Secretary's argument on this point saying "[i]f collections of trash outside active workings can be both permissible and hazardous, the fault lies neither with the Mine Safety Act nor with the Commission's legal reasoning, but with the Secretary's ... regulation," which did not forbid the relevant collections. *Id.* at 918. Just so here.

As the dissenting Commissioners pointed out, the ALJ properly noted that "under the plain meaning of section 56.12025, the Secretary failed to establish that CSG violated the regulation." *Contractors,* 20 F.M.S.H.R.C. at 979 (Riley & Verheggen, Comm'rs, dissenting) (citing 18

F.M.S.H.R.C. at 387–88). The regulation required that the equipment be grounded. The Secretary offered no evidence—none whatsoever—that the motors in question were not in fact grounded as required by the regulation. The regulatory definition of grounding simply defines "electrical grounding" as "to connect with the ground to make the earth part of the circuit." 30 C.F.R. § 56.2. The Administration not only did not prove any failure to make the earth part of the circuit but offered no evidence whatsoever on the subject and indeed did not conduct any testing to determine whether CSG was in compliance or not. CSG offered undisputed evidence that it was.

To excuse its noncompliance, the Administration does as it did in the trash collection case we discussed above: that is, it discusses the safety implications of the practice which it purports to punish. This discussion would be well and good if the MSHA were engaged in a rulemaking to outlaw frame grounding or to require fourth-wire grounding. But, as the dissenting Commissioners pointed out, in at least two of its uninterrupted prior losses on this same controversy, Administrative Law Judges have advised the Secretary that " ' "[i]f the Secretary believes frame grounding should be prohibited, the Secretary should initiate appropriate rulemaking to achieve this goal." ' " *Contractors,* 20 F.M.S.H.R.C. at 983 (Riley & Verheggen, Comm'rs, dissenting) (quoting *Secretary of Labor v. F. Palumbo Sand & Gravel,* 19 F.M.S.H.R.C. at 1440, 1444 (ALJ 1997) (quoting *Contractors,* 18 F.M.S.H.R.C. at 388)). The dissenting Commissioners agree. So do we. Nonetheless, the Secretary has not. It is not substantially justifiable for an agency to persistently prosecute citizens for violating a regulation that does not exist.

█ To track again the dissenting Commissioners, we note that while a " 'string of losses' " is not determinative, it " 'can be indicative' that an agency's position lacks substantial justification." *Contractors,* 20

F.M.S.H.R.C. at 983 (Riley & Verheggen, Comm'rs, dissenting) (quoting *Pierce v. Underwood,* 487 U.S. 552, 569, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Here, as the ALJ noted, every time the Secretary has presented the theory that the use of a particular grounding method other than that preferred by the Secretary is violative of the regulation, the responsible Administrative Law Judge has considered that theory not reasonable. *See Secretary of Labor v. Tide Creek Rock, Inc.,* 18 F.M.S.H.R.C. 390, 396–97 (ALJ 1996); *Secretary of Labor v. Mulzer Crushed Stone Co.,* 3 F.M.S.H.R.C. 1238 (ALJ 1981); *McCormick Sand Corp. v. Secretary of Labor,* 2 F.M.S.H.R.C. 21 (ALJ 1980). Again, if all of these ALJs are unwilling to buy the Secretary's expansive theory that the commendable goal of promulgating safety permits the Secretary to prosecute activity which violates no existing rule, it is time for the Secretary to repair to rulemaking, not to bring one more unsupportable citation. The bringing of one more is not substantially justified.

■ The Secretary's only other theory to sustain the Commission's conclusion of substantial justification is to advance the proposition that the Secretary's interpretation of the grounding rule as requiring certain types of grounding and outlawing others not mentioned anywhere in the rules is an interpretation of longstanding. In support of this, neither the Secretary nor the Commission majority have been able to point to any interpretation at any time, yet they continue to insist in the words of the citation served on petitioners, that "[f]rame grounding has been forbidden for fifteen years." The best support the Secretary can offer for this proposition is the declaration of a single engineering employee of MSHA who declared that in his tenure with the Administration the Administration had never allowed the frames of mining equipment to serve as equipment grounding conductors. It is not at all clear how the Secretary or the Commis-

sion concludes that the testimony of a witness as to what his agency will allow determines the standard of law against which citizens can be forced to defend. Be that as it may, even assuming that his understanding constituted agency policy, this would not create sufficient grounds for substantial justification. As we stated in *F.J. Vollmer Co.,* "we do not see how merely applying an unreasonable statutory interpretation for several years can transform it into a reasonable interpretation." 102 F.3d at 598. Even more, we do not see how grafting onto the plain language of a regulation a prohibition neither stated nor implied in that regulation can convert the enforcement of that imaginary rule into a substantially justified governmental act.

■ We note only in passing that the Commission's assertion that the Secretary's position had a reasonable basis in fact need not delay us, as we have demonstrated in the discussion of the law that the Secretary's position had no basis in fact. The fact that CSG was employing frame grounding is irrelevant to substantial justification once it is established that the use of that methodology is not a per se violation. The failure of the Secretary to conduct testing, let alone offer evidence that the testing demonstrated a violation of the real regulation, finishes the possibility that some reasonable basis in fact existed. Furthermore, having dispensed with the reasonable justification on the basis of law, we need not demonstrate that the Secretary's actions fail the substantial justification standard on other grounds as well. *See Air Transport Ass'n of Canada v. FAA,* 156 F.3d 1329, 1332 (D.C.Cir.1998) (per curiam) (rejecting a government argument that a claimant should be denied an EAJA award where the government's approach "was substantially unjustified on only one of several possible bases").

Like the ALJ and the dissenting Commissioners, we have no occasion to consider whether the extraordinarily large fines imposed were independently substantially

justified, given the substantial unjustification of the underlying citations.

### III. Conclusion

For the reasons set forth above, we reverse the decision of the Commission, and order that the award determined by the ALJ be restored to petitioner. We remand this case for further proceedings to determine the amount of an award to compensate petitioner for the costs of pursuing the petition for review in this court.

*So ordered.*