Richard J. ADAMS, Petitioner,

v.

SECURITIES AND EXCHANGE
COMMISSION, Respondent.

No. 01–1221.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 22, 2002.

Decided April 19, 2002

Marc B. Dorfman argued the cause for
petitioner. With him on the briefs was
Arthur M. Schwartzstein.

Michele R. Vollmer, Senior Counsel, Se-
curities and Exchange Commission, ar-
gued the cause for respondent. With her
on the brief were David M. Becker, Gener-
al Counsel, Richard M. Humes, Associate
General Counsel, and Samuel M. Forstein,
Assistant General Counsel.

Before: SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Richard J. Adams petitions for review of the denial of his application for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504. The Securities and Exchange Commission ruled that Adams's application was untimely because it was not filed within 30 days of the "final disposition" of his adversary adjudication as required by § 504(a)(2). The Commission reasoned that although its EAJA regulations define "final" to mean "final and unappealable," 17 C.F.R. § 201.44(b), because Adams was not aggrieved by the order of dismissal in his favor, the order was "unappealable" at its issuance; hence, there was no basis on which to conclude that the 30day filing deadline commenced only after the statutory 60-day period for appeal had expired rather than immediately upon the issuance of the order of dismissal. Adams contends that the Commission has confused the issue of appealability in the context of EAJA, with the underlying merits of an appeal. In other words, regardless of whether the disposition giving rise to the EAJA fee is specifically appealable, the EAJA filing deadline should not expire in any case until 30 days after the time for appeal under the relevant law of appealability, here 15 U.S.C. § 78y(a)(1), has expired or the appeal has been completed. We agree, for the Commission's position involves the awkward practice of requiring a case-by-case examination of appealability contrary to the purposes of EAJA. Accordingly, we grant the petition to the extent of reversing the denial of Adams's EAJA application; we remand the case to the Commission to determine Adams's eligibility for fees.

I.

The Division of Enforcement of the Commission has pursued both judicial and administrative proceedings against Adams. Beginning September 30, 1991, the Division filed a civil injunctive action in the United States District Court for the District of New Jersey alleging that Adams and others engaged in the fraudulent offer and sale at artificial prices of securities in initial public offerings and manipulated the after-markets in those securities from January 1, 1987 to December 20, 1988 in violation of §§ 5(a), 5(b), 5(c), and 17(a) of the Securities Act of 1933, §§ 10(b) and 15(c) of the Securities Exchange Act of 1934, and Rules 10b–5, 10b–6, and 15c1–2 thereunder. *SEC v. Graystone Nash, Inc.,* 820 F.Supp. 863, 868 (D.N.J.1993), *rev'd,* 25 F.3d 187 (3d Cir.1994). Based on a record limited by an order precluding Adams from presenting certain evidence because of his initial invocation of the Fifth Amendment, the district court granted summary judgment to the Division and ordered both injunctive relief and disgorgement in the amount of $60,565,581. *Id.* at 869–76. The Third Circuit reversed on the ground that the district court failed to consider the relevant factors in concluding that preclusion was appropriate. *SEC v. Graystone Nash, Inc.,* 25 F.3d 187, 193–94 (3d Cir.1994). On remand, the district court stayed the litigation pending resolution of the Division's administrative proceeding, which was commenced prior to the decision of the Third Circuit.

On April 21, 1994, the Commission instituted administrative proceedings against Adams, pursuant to §§ 15(b)(4) and (6) of the Exchange Act. *In re Graystone Nash, Inc.,* Admin. Proc. File No. 3–8327, 1993 WL 152562, 1994 SEC LEXIS 1303 (Apr.

21, 1994). The Commission denied Adams's motion to dismiss the administrative claims as time barred, but dismissed the proceedings based on the district court's entry of an injunction. *In re Graystone Nash, Inc.*, Exchange Act Release No. 35907, Admin. Proc. File No. 3–8327, 1995 WL 399432, at, *1–*2, 1995 SEC LEXIS 1634, at *2–*3 (June 28, 1995). An administrative law judge ("ALJ") thereafter held an evidentiary hearing on the remaining, independently alleged violations by the Division. *In re Graystone Nash, Inc.*, 62 SEC Docket 671, Admin. Proc. File No. 3–8327, 1996 WL 360258, at *1–*2, 1996 SEC LEXIS 3545, at *1–*3 (June 27, 1996). The ALJ dismissed the proceedings on two grounds: first, as time barred in light of an intervening decision by this court in *Johnson v. SEC*, 87 F.3d 484 (D.C.Cir.1996), holding that the five-year statute of limitations set forth in 28 U.S.C. § 2462 applied to such proceedings, and second, on the alternate ground that the Division failed to prove that Adams violated the securities laws. *In re Graystone Nash*, 1996 WL 360258, at *21, 1996 SEC LEXIS 3545, at *59. The Division appealed and the Commission, on February 11, 1998, dismissed the administrative proceeding. The full main text of the Commission's opinion stated:

> On June 27, 1996, an administrative law judge dismissed proceedings that had been brought by our Division of Enforcement against Richard J. Adams. The law judge based her dismissal on the decision in *Johnson v. SEC*, 87 F.3d 484 (D.C.Cir.1996), which held that 28 U.S.C. Section 2462 prohibited this Commission from imposing a censure and a supervisory suspension in an administrative proceeding because the proceeding had been initiated more than five years after the conduct at issue. It is undisputed that all of the conduct at issue here occurred more than five years

before the institution of proceedings. The law judge further found that the Division had not proved that Adams violated any section of the securities laws, and used that finding as an alternative basis for her decision to dismiss. On July 30, 1997, we granted the Division's petition for review.

> Although the Division vigorously disputes the law judge's factual conclusions, it has decided not to seek reversal of her decision in light of the *Johnson* decision and the "current procedural posture of this case." In a parallel proceeding in federal district court, the Division is currently seeking an injunction against Adams based on the same allegations as in this proceeding. We have determined that, given the age of this case and that the Division does not oppose dismissal, it is appropriate to dismiss this matter. We intimate no view on the merits.

> Accordingly, IT IS ORDERED that this proceeding be, and it hereby is, dismissed.

*In re Adams*, Exchange Act Release No. 39645, 1998 WL 52044, Admin. Proc. File No. 3–8327, 1998 SEC LEXIS 208 (Feb. 11, 1998) (footnotes omitted). No appeal was filed.

On May 8, 1998, eighty-six days after the Commission dismissed the administrative proceedings, Adams filed an application for attorneys' fees pursuant to EAJA. The ALJ rejected the Division's position that the fee application was untimely, and found that Adams was entitled to attorneys' fees because the Division's position at the hearing was not substantially justified. *In re Adams*, Initial Decision Release No. 176, Admin. Proc. File No. 3–8327, 2000 WL 1759456 (Nov. 30, 2000). The Division appealed and the Commission reversed, denying the fee application as untimely because it was filed more than thirty days after the final disposition of the

agency adjudication, citing 5 U.S.C. § 504(a)(2) and the Commission's EAJA regulations, 17 C.F.R. § 201.44(b). *In re Adams,* Exchange Act Release No. 44205, Admin. Proc. File No. 3–8327, 2001 SEC LEXIS 736, at *3–*5 (Apr. 19, 2001). The Commission noted that under § 25(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78y(a)(1), only "a person aggrieved by a final order of the Commission" has a right to appeal, and that Adams had no standing to appeal because he was not aggrieved by the Commission's order of dismissal. *In re Adams,* 2001 SEC LEXIS 736, at *5. Hence, in the Commission's view, the order of dismissal of February 11, 1998 constituted a final disposition under EAJA because it was both final and unappealable, giving Adams only 30 days thereafter to file an EAJA application. Concluding that Adams's application was untimely, the Commission did not reach the merits of Adams's entitlement to fees. *Id.* at *10 n. 19.

## II.

█ Under § 504 of EAJA, an agency shall award attorneys' fees and costs to a prevailing party (other than the United States) unless the agency's position was "substantially justified" if the requesting party submits an application "within thirty days of a final disposition in the adversary adjudication." 5 U.S.C. § 504(a). An "adversary adjudication" is defined to mean (i) a formal agency adjudication in which the position of the United States is represented by counsel, excluding adjudications as to rate making and licensing, (ii) proceedings before agency boards of contract appeals, (iii) agency hearings under the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. §§ 3801–3812 (an administrative scheme similar to the False Claims Act, 31 U.S.C. §§ 3729–3733), and (iv) agency hearings under the Religious Freedom Restoration Act of 1993, 42 U.S.C.

§§ 2000bb–2000bb–4. *Id.* § 504(b)(1)(C). Section 504 does not define "final disposition." The Commission's EAJA regulations, however, provide that a fee application must be filed within 30 days of the Commission's "final disposition," which it defines as the date a decision or order becomes "final and unappealable, both within the Commission and to the courts." 17 C.F.R. § 201.44.

Adams's counsel, presumably reading these provisions of the statute and the Commission's regulation together, concluded that Adams had 90 days in which he could file his application for fees: 60 days for the time for appeal to expire under § 25(a)(1) of the Exchange Act at which time the order of dismissal would become final and unappealable and then 30 days from this now final and unappealable dismissal order to file his fee application as provided in § 504(a)(2). Although, in light of the Commission's "unappealability" rationale for denying Adams's fee application, the parties devote nearly all of their briefs on appeal to the question whether the February 11, 1998 order of dismissal was appealable by Adams, we conclude that the case specific approach adopted by the Commission is inconsistent with the purposes of EAJA and unworkable in practice. First, however, we hold as a threshold matter that the meaning of "final disposition" in § 504(a)(2) is ambiguous, but that Congress intended it to mean final and not appealable. In so doing, we readily acknowledge that the question is one of first impression, that the statutory language and the legislative history are unhelpful on the precise question, and that EAJA precedent addresses only EAJA applications under § 2412 in connection with judicial proceedings. Nevertheless, we conclude that this guidance is relevant for two reasons: first, the underlying concerns that led the circuit courts of appeals (and

ultimately Congress) to conclude that the 30-day deadline should not begin to run until the appeals process is completed are also relevant in the administrative context, and second, the Administrative Conference of the United States, and consequently the Commission, has adopted EAJA regulations reflecting the clarification that Congress enacted in 1985 for EAJA requests in judicial proceedings.

Prior to the 1985 reenactment of EAJA, § 2412 provided that a party filing an application for fees in the court "shall, within thirty days of final judgment in the action, submit to the court an application for fees...." 28 U.S.C. § 2412(d)(1)(B) (1980) (amended 1985). The circuit courts of appeals differed as to whether the 30-day deadline for filing a fee application commenced upon a final but appealable order of the district court or not until the expiration of the time for appeal or the completion of any appeal taken. In *McQuiston v. Marsh,* 707 F.2d 1082 (9th Cir.1983), the Ninth Circuit held that the 30-day deadline commenced with the final order of the district court, stating that " 'final judgement' should be defined by its common usage in contexts such as 28 U.S.C. § 1291, Fed. R.App. P. 4(a), and Fed.R.Civ.P. 54." *Id.* at 1085. The Seventh Circuit, in *McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983), disagreed, holding that the 30-day period did not commence until after the appeals were completed. *Id.* at 314–16; *accord Mass. Union of Pub. Hous. Tenants, Inc. v. Pierce,* 755 F.2d 177, 179–80 (D.C.Cir. 1985). Observing that the practical consequences of the Ninth Circuit's approach militated against its adoption, the Seventh Circuit rejected the Ninth Circuit's conclusion as short on rationale, particularly as neither § 1291 nor Rule 4(a) refer to a "final judgment." *McDonald,* 726 F.2d at 314–15. Noting that other circuits had held that the fee application could be filed

after the completion of appellate proceedings, and concluding that "theirs is the better approach," the Seventh Circuit also observed that Congress could clarify the matter if it decided to reenact EAJA, which was due to expire in ten months, on October 1, 1984, Pub.L. No. 96-481, Title II, § 203(c), 94 Stat. 2327 (Oct. 21, 1980). *McDonald,* 726 F.2d at 315. Congress responded by amending § 2412 to define "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." Pub.L. No. 9980, § 2, 99 Stat. 185 (Aug. 5, 1985) (codified at 28 U.S.C. § 2412(d)(2)(G)). The House Report states that the amendment adopted the Seventh Circuit's approach in *McDonald.* H.R.Rep. No. 99-120, at 18 (1985), 1985 U.S. Code Cong. & Admin. News at 132, 146.

Unlike § 2412, however, the EAJA provision on agency proceedings is unhelpful even after Congress's 1985 reenactment of EAJA, with amendments, in answering the question whether the 30-day deadline for filing commences with a final and appealable agency order or not until the appeal time has expired or any appeal is completed. The only possibly relevant amendment to § 504 was the addition of the sentence:

> When the United States appeals the underlying merits of an adversary adjudication, no decision on an application for fees and other expenses in connection with that adversary adjudication shall be made under this section until a final and unreviewable decision is rendered by the court on the appeal or until the underlying merits of the case have been finally determined pursuant to the appeal.

5 U.S.C. § 504(a)(2). This sentence, however, lends itself to alternative readings: it can be read as presupposing the existence of a timely filed fee application, meaning that the fee application must be filed with-

in 30 days of the final agency order, with the only restriction being that when the government files an appeal, the agency cannot act on the application until the appeal is completed; or, the language can be read as only reaffirming that no fees are appropriately awarded pursuant to § 504 until the government's efforts to appeal are completed, but leaving open the question of when a disposition is final for purposes of the commencement of the 30-day deadline. Indeed, the latter reading is consistent with the possibility that the 30-day filing period is a time limit and not a window for filing, so that a fee applicant could file for fees before there were either a final disposition or a final judgment. *See* S.Rep. No. 96-253, at 21 (1979); H.R.Rep. No. 96-1418, at 18 (1980), 1980 U.S. Code Cong. & Admin. News at 4984, 4997; H.R.Rep. No. 99-120, at 18 n.26, 1985 U.S. Code Cong. & Admin. News at 146 n.26. *Compare Mass. Union of Pub. Hous. Tenants*, 755 F.2d at 179 (citing *McDonald*, 726 F.2d at 314), *with Melkonyan v. Sullivan*, 501 U.S. 89, 103, 111 S.Ct. 2157, 2165–66, 115 L.Ed.2d 78 (1991).

In light of Congress's adoption of its approach, the Seventh Circuit's analysis of when EAJA's 30-day deadline begins to run is highly relevant to understanding the meaning of "final disposition" in § 504(a)(2). The Seventh Circuit made four salient observations, all of which are applicable in agency as well as judicial proceedings. First, the court stated that it could not imagine that the government would be willing to pay fees before the time after completion of all appeals or the expiration of the time limitations for appeals. *McDonald*, 726 F.2d at 313. This would appear to be no less true in administrative proceedings. Certainly, if the instant case is representative, it is clear that the government would strongly urge that its position was "substantially justified," a position consistent with the government

appealing when it can. Second, the Seventh Circuit noted the cost to the applicant of having to file multiple fee applications—one following the judgment in the district court and another following the judgment from the court of appeals. *Id.* at 314. It is no less true in cases arising in the administrative context that it makes "more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings." *Id.* Even if EAJA may still *allow* the filing of two applications by reading EAJA's 30-day period as not a window for filing, but rather merely as a deadline for filing, allowing the applicant to choose when to file does not disadvantage the government: "[G]iving the claimant a choice whether to ask for fees after he wins in the district court or after the appeal maximizes his welfare, at some cost perhaps to the courts but none we can think of to the executive branch." *Id.* at 314–15. Third, the Seventh Circuit rejected as insignificant any judicial economy at the appellate level that would result from requiring the fee application to be filed within 30 days of the district court's final judgment, and thereby allowing the fee award to be acted on in time to allow an appeal from the fee award to be consolidated with the appeal from the judgment. *Id.* at 314. The court noted, in part, that "the judicial economy may be largely illusory if … the claimant is entitled in suitable cases to reimbursement of appellate fees." *Id.* Here, too, the situation would be analogous in agency proceedings; we find no evidence that appellate economy warrants an earlier application deadline in light of the lost economy from multiple fee applications. Further, appellate economy is built into the statutory scheme for fees in administrative proceedings; §§ 504(c)(1) and 2412(d)(3) work in tandem so that the appeals court can award fees

for both the agency and court proceedings. *See* 5 U.S.C. § 504(c)(1); 28 U.S.C. § 2412(d)(3). Fourth, the Seventh Circuit took account of the fact that forcing a claimant to file a fee application within 30 days of the final judgment of the district court "delivers into the hands of the government a potent, acknowledged, and from the standpoint of the policy of [EAJA] perverse weapon for discouraging meritorious fee applications." *McDonald*, 726 F.2d at 315. In *McDonald*, the fee applicant had recovered only a "wretched pittance" in Social Security benefits. *Id.* Her attorney thus faced the dilemma of choosing between jeopardizing her reward by filing a fee request to recover reasonable attorneys fees, which raises the stakes for the government and hence makes the government more likely to appeal, or foregoing a fee application altogether. *Id.* Although Adams's attorney faces no such quandary, the possibility of such a dilemma would as a general matter appear no less likely when the government can appeal an administrative proceeding than in a judicial proceeding.

Additionally, the Administrative Conference of the United States, to which Congress gave the task of consulting with each agency to ensure adoption of "uniform procedures for the submission and consideration of applications for an award of fees," 5 U.S.C. § 504(c)(1), interpreted "final disposition" to mean "final and unappealable." *Model Rules for Implementation of the Equal Access to Justice Act*, 51 Fed.Reg. 16,659, 16,662 (May 6, 1986). The Administrative Conference specifically noted that when the government can appeal a final agency disposition and the time to file an appeal is longer than 30 days, "[t]here is no point in requiring the applicant to meet an arbitrary filing deadline of 30 days after issuance of the decision if the agency will not consider the application" until the time for an appeal has lapsed. *Id.* Although

the Administrative Conference was aware that in most administrative proceedings covered by EAJA the government will be unable to appeal its own decision, it nonetheless concluded that:

> While the same considerations will not apply in most other agency proceedings, where the government will not appeal, we believe the best approach is to modify the definition of "final disposition" for all proceedings. This will provide consistency among agency proceedings as well as with court cases, and will avoid the confusion that sometimes arises as to whether an application must be filed with an agency to preserve rights even though some portion of a case is being appealed to the courts.

*Id.* Although the Model Rule's use of "unappealable" is not identical to "not appealable" in 28 U.S.C. § 2412(d)(2)(G), the Administrative Conference clearly meant it to have the same meaning and incorporate the same concepts. Because Congress gave the Chairman of the Administrative Conference the task of overseeing the adoption by each agency of "uniform procedures," 5 U.S.C. § 504(c)(1); *see* H.R.Rep. No. 96-1418, at 16, 1980 U.S. Code Cong. & Admin. News at 4995, as EAJA is a law of general applicability, the Conference's views warrant at the very least possible *Skidmore* deference. *See United States v. Mead Corp.*, 533 U.S. 218, 237–38, 121 S.Ct. 2164, 2176–77, 150 L.Ed.2d 292 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *see also Escobar Ruiz v. INS*, 813 F.2d 283, 289 (9th Cir.1987).

In our view, much as we concluded in *Massachusetts Union*, 755 F.2d at 180, in adopting the Seventh Circuit's analysis and holding in *McDonald*, the practical reasons underlying the Seventh Circuit's defining "final" as unappealable for purposes of § 2412 in *McDonald* are both

compelling and applicable to "final dispositions" under § 504. That Congress adopted the *McDonald* approach for applications in judicial proceedings under § 2412 suggests that Congress also agreed with the court's underlying reasoning, which is equally applicable to fee applications in agency proceedings under § 504. Additionally, the Administrative Conference specifically concluded that the 30-day EAJA deadline that applies in agency proceedings should be analogous to the 30-day EAJA deadline that applies in judicial proceedings. For these reasons, we conclude that "final" as used in § 504(a)(2) means "final and unappealable."

The Commission interpreted the word "unappealable" in its EAJA regulation to require a case-by-case determination as to whether a party is aggrieved, and thus could file an appeal that would withstand dismissal for lack of standing. *In re Adams*, 2001 SEC LEXIS 736, at *5. Such an interpretation is inconsistent with the underlying purposes of EAJA. The Commission's regulation, ambiguous on its face, must be construed to avoid inconsistency with EAJA. *See Sec'y of Labor, Mine Safety & Health Admin. v. W. Fuels–Utah, Inc.*, 900 F.2d 318, 320 (D.C.Cir. 1990). Because EAJA is a statute of general applicability and the Commission's regulations purport to interpret § 504, however, the usual deference accorded to an agency's interpretation of its own regulations does not apply. *Cf. Contractor's Sand & Gravel, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 199 F.3d 1335, 1339 (D.C.Cir.2000). Instead, the court must determine the meaning of "final disposition," and hence "unappealable," as any question of law committed to the court for decision and not the agency. *Id.* Additionally, the Commission's use of "unappealable" is wholly derived from the Administrative Conference's Model Rules. Recognizing that the Commission could not appeal its own orders under 15 U.S.C. § 78y(a)(1), the Commission did not adopt that part of the Model Rules that addresses government appeals, but it did adopt the Administrative Conference's definition of "final" as meaning "final and unappealable." *Equal Access to Justice Act Rules, Proposed Rulemaking*, 54 Fed.Reg. 11,961, 11,963 n.11 (Mar. 23, 1989); *Equal Access to Justice Act Rules, Adoption of Rules*, 54 Fed.Reg. 53,050, 53,052 (Dec. 27, 1989) (codified at 17 C.F.R. § 204.44(b)). Thus, only after consultation with the Chairman of the Administrative Conference, *see* 5 U.S.C. § 504(c)(1), and ultimately consistent with the Administrative Conference's Model Rule, did the Commission promulgate its regulation that no application for EAJA fees is to be filed until the agency's final order become "unappealable, both within the Commission and to the courts." 17 C.F.R. § 201.44. In determining the meaning of "unappealable," then, the court is not restricted by the Commission's interpretation of the term in its regulation and must instead derive the meaning of the word from EAJA itself. Nor is the court required to interpret strictly the statutory deadline simply because it is a jurisdictional prerequisite to government liability; defining the starting point of the deadline does not expand government liability because "the amount of the fee will not be affected and that is the important thing to the public fisc." *McDonald*, 726 F.2d at 314.

Congress originally enacted EAJA with the purpose of "expand[ing] the liability of the United States for attorneys' fees and other expenses in certain administrative proceedings and civil actions." H.R.Rep. No. 99-120, at 4, 1985 U.S. Code Cong. & Admin. News at 132. Realization of this purpose necessarily requires an interpretation of the procedural requirements of EAJA in a manner that is not unduly

confusing or misleading so that they are not a "trap for the unwary." *Myers v. Sullivan*, 916 F.2d 659, 670 (11th Cir.1990). As stated in the House Report adopting the *McDonald* approach:

> The court should avoid an overly technical construction of these terms. This section should not be used as a trap for the unwary resulting in the unwarranted denial of fees.

H.R.Rep. No. 99-120, at 18 n.26, 1985 U.S. Code Cong. & Admin. News at 146. As the instant case illustrates, the case-specific approach adopted by the Commission constitutes such a trap. The lack of clarity as to the "appealability" of the Commission's order dismissing the administrative proceedings against Adams arises at several levels: the basis of the Commission's order of dismissal is ambiguous because it is unclear whether the dismissal was with or without prejudice, and, even if the dismissal were without prejudice, it is not obvious whether Adams would nonetheless have been "aggrieved" under § 25(a)(1) of the Securities Exchange Act. Consequently, Adams faced the dilemma of when to file his application for fees. Unless he filed two fee applications—an inefficient solution—Adams faced the risk of filing either a possibly premature or time-barred fee application. This appears to be precisely the type of confusion that the Administrative Conference and Congress sought to avoid. *See id.* at 7. A bright-line rule eliminates the high potential for confusion resulting from determining "appealability" on a case-by-case basis and appropriately avoids the practical problems that the Seventh Circuit described. Under such a rule, applicants will have fair notice of when the time to file an EAJA fee application will expire. Thus, under a bright-line rule, even when an appeal would be arguably nonjusticiable, as here, if the governing statute relevant to the underlying agency proceeding allows an appeal generally, the underlying order should be considered "appealable" and the 30-day deadline for filing an EAJA fee application does not expire until 30 days after the time to appeal has expired or the appeal has concluded. The alternative, to require a case-by-case determination of "appealability" based on a party's aggrievement, would pointlessly leave considerable uncertainty about when EAJA's 30day deadline would expire and result in an unworkable rule that requires the filing of multiple applications and unnecessary involvement of the courts on appeal.

■ For these reasons, we hold that § 504(a)(2) of EAJA is to be interpreted as creating a bright-line rule, discernible by looking at the category of order in question and the applicable law of appealability. When a potential appeal exists under the relevant statute, the time for appeal must lapse, or the appeal be completed, before the 30-day deadline begins to run. *See Myers*, 916 F.2d at 671–72, 674. Because Adams could have potentially appealed the Commission's order of dismissal pursuant to § 25(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78y(a)(1), the 30-day deadline did not begin to run until 60 days following the order of dismissal had lapsed.

Accordingly, we grant Adams's petition to the extent of reversing the Commission's denial of his fee application as untimely, and we remand the case to the Commission for a determination of his eligibility for fees. Although we are sympathetic to Adams's concern that "ten years of litigation is enough," his EAJA application was not filed until 1998. Our decision in *3M Co. v. Browner*, 17 F.3d 1453 (D.C.Cir.1994), is not dispositive on the issue of whether the Division's position was "substantially justified," and the Commission persuasively contends in its brief on appeal that a determination of eligibility requires review of a lengthy administrative

record that is best left to it in the first instance. *See, e.g., Global Van Lines, Inc. v. ICC,* 804 F.2d 1293, 1305 n. 95 (D.C.Cir. 1986); *see also PPG Indus., Inc. v. United States,* 52 F.3d 363, 365 (D.C.Cir.1995). The cases on which Adams relies are not to the contrary, and Adams has not shown that a remand would be futile. *See George Hyman Constr. Co. v. Brooks,* 963 F.2d 1532, 1539 (D.C.Cir.1992).