

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2003

# Scafar Contracting v. Secretary Labor

Precedential or Non-Precedential: Precedential

Docket 02-3335

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Scafar Contracting v. Secretary Labor" (2003). *2003 Decisions.* Paper 582.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/582

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 15, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3335

SCAFAR CONTRACTING, INC.,

Petitioner

v.

SECRETARY OF LABOR; OCCUPATIONAL SAFETY
AND HEALTH REVIEW COMMISSION

Respondents

ON APPEAL FROM THE OCCUPATIONAL SAFETY
AND HEALTH REVIEW COMMISSION

(No. 97-0960)

Argued March 11, 2003

BEFORE: SLOVITER, NYGAARD, and ALARCON,*
*Circuit Judges.*

(Filed: April 15, 2003)

Joseph Paranac, Jr., Esq. (Argued)
St. John & Wayne
Two Penn Plaza East
Newark, NJ 07105
*Counsel for Petitioner*

* Honorable Arthur L. Alarcon, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Allen H. Feldman, Esq.
Nathaniel I. Spiller, Esq.
Mark E. Papadopoulos, Esq.
 (Argued)
United States Department of Labor
Office of the Solicitor
Room N-2700
200 Constitution Avenue, NW
Washington, DC 20210
    *Counsel for Respondents*

## OPINION OF THE COURT

NYGAARD, *Circuit Judge*:

In this appeal we must decide whether the requirement in the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, that an application for attorneys' fees be filed "within thirty days from the final disposition in an adversary adjudication" means: 30 days from the time at which the agency issues a final and appealable order; or, 30 days from the time at which the final order becomes unappealable. The Occupational Safety and Health Review Commission interpreted the statute to mean 30 days from the date on which the order of the agency became final and appealable and denied Appellant's request for fees pertaining to the administrative proceeding. We will reverse. The language of, and policy behind, the EAJA counsels that the term "final disposition" means final and unappealable. Thus, an application for attorney's fees pursuant to 5 U.S.C. § 504 is timely if filed prior to the expiration of 30 days from the date the decision of the agency becomes final and unappealable.

## I.   Jurisdiction and Standard of Review

The Occupational Safety and Health Review Commission had jurisdiction to evaluate the Secretary of Labor's Petition pursuant to § 10(c) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 651 *et seq.* Our jurisdiction over an appeal from a final order by the Commission is provided by § 11 of the OSH Act, 29 U.S.C. § 660.

We have plenary review over the Commission's legal interpretation of the EAJA. *Sea-Land Serv., Inc. v. Rock*, 953 F.2d 56, 59 (3d Cir. 1992). Because the EAJA is a statute of general applicability and the Occupational Safety and Health Administration is not charged with administering it, we are not required to afford much deference to OSHA's regulatory interpretations. *Id.* at 59 ("While no deference is accorded to the [Benefits Review Board]'s interpretation of the Act as it does not administer it, we have indicated that we will respect that interpretation if it is reasonable.")(citations omitted); *see also Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990) ("A precondition to deference under *Chevron* is a congressional delegation of administrative authority.").

## II. Factual and Procedural Background

The facts relevant to our review are not in dispute. In 1996, an OSHA Compliance Officer inspected a work site that involved removing and replacing a sewer line in Newark, New Jersey. Scafar Contracting was the trenching contractor responsible for the depth and safety of the trenches. As part of the inspection, the officer issued Scafar two citations alleging serious and willful violations of the Occupational Safety and Health Act. The proposed penalties were $99,000 for the alleged willful violations and $4,000 for the alleged serious violations. Scafar contested the citations and eventually the proceeding came before an Administrative Law Judge in February and April of 1998. In his July 24, 1998 decision, the ALJ vacated the willful violations and reduced the penalty for the serious violation to $1,600.

The Secretary filed a Petition for Discretionary Review with the Commission on August 25, 1998, requesting review of the July 1998 decision. The Commission did not accept the invitation to review and entered a Notice of Final Order upholding the ALJ's decision, which had an effective date of September 4, 1998. On October 30, 1998, the Secretary filed a Petition for Review of the July 1998 decision with us. However, no action on the merits was taken because the Secretary abandoned her appeal by filing a motion to withdraw the appeal on December 10, 1998.

We granted the motion on January 25, 1999. Scafar filed its Application for Fees and Expenses under the EAJA within 30 days of the date we dismissed the Secretary's appeal. The Secretary filed its opposition to the application, but we chose not to decide the fee issue. *Herman v. Scafar Contracting, Inc.*, No. 98-6411, (3d Cir. April 29, 1999) ("This court does not act substantively on the application of Scafar for attorney's fees and expenses under the Equal Access to Justice Act."). Instead, we remanded the application to the Commission, holding that they "shall treat the motion as if filed on the date it was filed in this court." *Id.* We further pointed out "that there were no adversary proceedings in this court as the petitioner Herman after filing her petition moved to dismiss the petition and the respondents Scafar and the Commission did not oppose the motion." *Id.* The Commission then remanded to the ALJ without acting on the application. For purposes of this litigation, we will continue to treat the application for fees as being filed on February 24, 1999.

The ALJ issued his decision on September 2, 1999, granting Scafar's application for $66,220.49 in fees, after finding that the Secretary was not substantially justified in issuing and pursuing enforcement of meritless OSH Act violations. In her Petition for Discretionary Review, the Secretary renewed her allegation that the application with respect to the agency adjudication was untimely.[1] The Commission granted review and adopted the Secretary's position that the application was untimely for the fees sought under 5 U.S.C. § 504. *Sec. of Labor v. Scafar Contracting, Inc.*, No. 97-0960 (OSHRC, Nov. 21, 2000). The Commission applied OSHA regulations to find that the 30-day period for filing a fee application began to run on September 4, 1998—when the ALJ's July 24, 1998 decision became final and appealable. Under the Commission's construction, the time for Scafar to file its application

---

1. At oral argument we asked the parties to comment on the potential concern that the Secretary had waived her right to assert the defense of untimeliness by not raising the issue when first opposing the application for fees filed with this Court. Because we find that Scafar filed its application for fees in a timely fashion under the statute, it is unnecessary to reach the issue of waiver.

expired on October 4, 1998, well before the February 24, 1999 filing date that we indicated in our remand order. The Commission reversed the ALJ and remanded for the determination of the proper amount attributable solely to the prior proceeding before us. Although Scafar attempted to appeal this decision, we ruled that the remand order was not a final order and thus we had no jurisdiction for the appeal. *See Scafar Contracting, Inc. v. Herman*, No. 00-4431 (3d. Cir. December 27, 2001).

On remand, the ALJ awarded Scafar $11,183.72 for fees and expenses incurred in connection with the proceedings before us.[2] Scafar petitioned the Commission for discretionary review, but the Commission declined and issued a Notice of Final Order on August 8, 2002. This appeal was taken August 23, 2002.

## III.   Discussion

The Equal Access to Justice Act was enacted to award private litigants their expenses incurred in defending against unreasonable government actions. As the statute provides awards of these fees and expenses for both administrative and judicial proceedings, the EAJA has been bifurcated between 5 U.S.C. § 504 and 28 U.S.C. § 2412. Despite the separate statutes, the provisions are closely intertwined and in certain circumstances will shift the proper forum for the decision on the application.

With respect to agency proceedings, the applicable statute is § 504, which provides, in part, that:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

2. Properly, this amount did not include expenses incurred by Scafar during its inappropriate appeal of the Commission's November 21, 2000 remand order.

5 U.S.C. § 504(a)(1). To be entitled to this award of fees, a prevailing party must file an application with the agency "within thirty days of a final disposition in the adversary adjudication." 5 U.S.C. § 504 (a)(2). However,

> [w]hen the United States appeals the underlying merits of an adversary adjudication, no decision on an application for fees and other expenses in connection with that adversary adjudication shall be made under this section until a final and unreviewable decision is rendered by the court on the appeal or until the underlying merits of the case have been finally determined pursuant to the appeal.

*Id.* Pursuant to the OSH Act, the Secretary has 60 days after the issuance of a final order to file her appeal. 29 U.S.C. § 660(a),(b).

When an appeal to our Court is taken, the forum for deciding fees shifts to the second statute. 5 U.S.C. § 504(c)(1) ("If a court reviews the underlying decision of the adversary adjudication, an award for fees and other expenses may be made only pursuant to section 2412(d)(3) of title 28, United States Code."). In turn, the applicable provision becomes 28 U.S.C. § 2412, which provides that:

> In awarding fees and other expenses under this subsection to a prevailing party in any action for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code, . . . the court shall include in that award fees and other expenses to the same extent authorized in subsection (a) of such section, unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(3). Therefore, we are empowered to award fees for both the agency adjudication and the civil action, if we reach the underlying merits. Earlier, however, we declined to rule on the fees because we did not reach the merits of the appeal, and instead remanded to the Commission.

Thus, we are presented with the question of how the term

"final disposition" in 5 U.S.C. § 504 should be interpreted. As is the case in all exercises of statutory interpretation, we must first look to the plain language of the statute. "There is no need to resort to legislative history unless the statutory language is ambiguous." *United States v. Doe*, 980 F.2d 876, 877 (3d Cir. 1992) (quoting *Velis v. Kardanis*, 949 F.2d 78, 81 (3d Cir. 1991)). In reviewing the language of the statute, we find that the term "final disposition" is ambiguous. Unlike "final judgment" in 28 U.S.C. § 2412— which is defined as final and not appealable—no clear definition of "final disposition" is present, nor can be gleaned from the surrounding language.[3] The absence of language indicating when a "final disposition" occurs requires us to look beyond the text of the statute to determine when the 30-day filing period begins to run.

We start with a discussion of 28 U.S.C. § 2412. How our Circuit and others solved the ambiguity originally found in the term "final judgment" in § 2412 provides valuable insight into how we should interpret "final disposition" in § 504.

### 1. *The final word on "final judgment"*

An application for fees in the civil action must be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412 (d)(1)(B). The statute now defines the term "final judgment" as "a judgment that is final and not appealable." 28 U.S.C. § 2412 (d)(1)(G). Before this congressional amendment, courts of appeal were divided on the issue of whether the 30 days began to run from the district court's decision or from the time at which the district court's decision became unappealable. *Compare*

---

3. The ambiguity of "final disposition" is highlighted by the conflicting interpretations put forth by OSHA in this case and the position of the Court of Appeals for the D.C. Circuit in *Adams v. SEC*, 287 F.3d 183 (D.C. Cir. 2002). According to OSHA, a "final disposition" occurs when the agency issues a final order. *See* 29 C.F.R. 2204.302. Under the D.C. Circuit's approach, a disposition is not final until the time for appeal has run. *Adams*, 287 F.3d at 191. Neither interpretation of "final disposition" contradicts the text of the statute and both are equally plausible from the plain language of the text.

*McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir. 1983) ("[A] request for attorneys' fees under subsection (d) is untimely if filed more than 30 days after the district court has entered judgment.") *with McDonald v. Schweiker*, 726 F.2d 311, 315 (7th Cir. 1983) (disagreeing with *McQuiston* and interpreting "final judgment" to mean final and unappealable). Despite the congressional resolution of "final judgment" and the separate statute for agency proceedings, we begin with a discussion of the § 2412 cases because the reasons for interpreting this clause aid our understanding of the term "final disposition."

In *McDonald*, the Court of Appeals for the Seventh Circuit addressed the question of "whether an application for such an award is untimely if filed more than 30 days after the district court renders its final judgment, although less than 30 days after any appellate proceedings are completed." 726 F.2d at 312 The court noted that the term "final judgment" was not defined in the EAJA and that various definitions abounded in our statutory provisions. *Id.* at 313. The court explicitly rejected the contention presently put forth by the Secretary here—that waivers of sovereign immunity are to be narrowly construed—because the court found that there was no difference "to the Treasury of the United States if the 30-day period for making a fee application runs from the end of the district court proceedings or from the end of all the proceedings; the amount of the fee award will not be affected and that is the important thing to the public fisc." *Id.* at 314. The practical consequences also favored finding that the time ran from the date the decision became unappealable. The court noted that under the alternative construction, a prevailing party would have to file several fee applications because the EAJA authorized awards for both the district court and appellate level and the party would not know the total amounts to which they were entitled. *Id.*

The Seventh Circuit also expressed one other overwhelming concern. If the EAJA requires a prevailing party to file its application prior to the expiration of the time for the government's appeal, this creates an incentive for the agency to appeal that is contrary to the remedial intent of the EAJA. Specifically, the court was concerned

that early filing "delivers into the hands of the government a potent, acknowledged, and from the standpoint of the policy of the Equal Access to Justice Act perverse weapon for discouraging meritorious fee applications." *Id.* at 315. Using the situation before them as an example, the court explained that:

> [T]he government is unlikely to pursue an appeal where the stakes are only $652.50. Its adversary knows this and knows also that if he increases the stakes to the government by applying for fees, the government (as it emphasized to us in its briefs and at argument) will be more likely to appeal the underlying judgment.

*Id.* In light of this potential conflict, the Seventh Circuit found that:

> The framers of the Equal Access to Justice Act could not have meant to create such a dilemma when they used the words "final judgment" without in all likelihood considering what the words might mean in the setting of the present case. They wanted to make it easier, not harder, for people of limited means to collect their small claims from the government.

*Id.* (citing H.R.Rep. No. 1418, 96th Cong. 2d Sess. 18 (1980)). The court also pointed out that the General Accounting Office will not approve payment on EAJA claims until all appellate proceedings are at an end. Ultimately, the Seventh Circuit held that "final judgment" meant final and unappealable and reinstated the appellant's application as timely.

We addressed the ambiguity of "final judgment" in *Taylor v. United States of America*, 749 F.2d 171 (3d Cir. 1984). In *Taylor*, the appellant had filed his application for fees within 30 days from the date the Secretary told him that she would not appeal the district court's decision. This filing date, however, was outside the 30 days from the district court's decision and the district court dismissed the application as untimely. We reversed and cited with approval the decision in *McDonald*. We found that the "final and not appealable" construction "avoids both unnecessary fragmentation of fee petitions and the waste of judicial resources that would be caused by filing petitions for fees

in cases that are ultimately reversed or remanded." *Id.* at 173. We found it "somewhat anomalous to require an EAJA petition to be filed before the petitioner can know the amount he or she will seek and before the petition may even be addressed." *Id.* We also noted an impending congressional amendment, clarifying the meaning of "final judgment" in § 2412 as final and not appealable, and adopted that construction.

### 2. *The unsettled word on "final disposition"*

Unlike § 2412, Congress has never endeavored to define "final disposition" in § 504. Congress did, however, empower the Administrative Conference in 1985 to establish model rules for the agencies in enacting the general purposes of the EAJA. The Conference specifically addressed the confusion over "final disposition" and created a model rule such that "final disposition means the date on which a decision or order disposing of the merits of the proceeding or any other complete resolution of the proceeding, such as a settlement or voluntary dismissal, become a [sic] *final and unappealable, both within the agency and to the courts.*" *Administrative Conference of the United States,* Model Rule § 315.204, 51 Fed. Reg. 16659, * 16668 (1986) (emphasis added). Thus, the Conference intended "final disposition" to mean final and unappealable. The Conference explained that they hoped to "provide consistency among agency proceedings as well as with court cases, and . . . avoid the confusion that sometimes arises as to whether an application must be filed with an agency to preserve rights even though some portion of a case is being appealed to the courts." *Id.* at *16662.

The Secretary argues that we owe no deference to the model rules or the Conference because the Conference no longer exists. Notwithstanding OSHA's interpretation, the EAJA is a statute of general applicability and we do not owe deference to any particular agency's interpretation. However, as the Court of Appeals for the D.C. Circuit recently noted, "[b]ecause Congress gave the Chairman of the Administrative Conference the task of overseeing the adoption by each agency of 'uniform procedures,' . . . the Conference's views warrant at the very least possible

*Skidmore* deference." *Adams v. SEC*, 287 F.3d 183, 189 (D.C. Cir. 2002).[4] We conclude that the Conference's position defining "final disposition" as final and unappealable provides a sound and consistent approach for interpreting the EAJA, irrespective of whatever level of *Skidmore* deference may be appropriate.

In attempting to discredit the model rules, the Secretary points to the regulations enacted by OSHA. These regulations say that an application must be filed "in no case later than thirty days after the Commission's final disposition of the proceeding." 29 C.F.R. 2204.302(a). The regulations further define "final disposition" to mean either:

> (1) The date on which the order of the judge disposing of the case becomes final under section 12(j) of the OSH Act, 29 U.S.C. 661(j); or

> (2) The date on which the order of the Commission affirming, modifying, or vacating the Secretary's citation or proposed penalty or directing other appropriate relief becomes final under section 10(c) of the OSH Act, 29 U.S.C. 659(c).

29 C.F.R. 2204.302(d)(1)-(2). Pursuant to 29 U.S.C. § 659(c), a decision "shall become final thirty days after its issuance."[5] The Secretary argues that the Commission's

---

4. Because the Congress charged the Administrative Conference with the official duty of interpreting the EAJA and developing model rules, we would traditionally afford the resultant determinations some deference:

> [T]he Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case. . . . We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift*, 323 U.S. 134, 139-40 (1944).

5. Although not implicated on this appeal, 29 U.S.C. § 661(j) similarly provides that the ALJ's decision "shall become the final order of the

regulations tie "final disposition" to the issuance of a final order—which is final and appealable—and not the time after which an appeal can no longer be taken. While the internal regulations of the Commission suggest the time period should run from the final and appealable order, the EAJA is a statute of general applicability and OSHA's interpretation is not definitive. We must decide for ourselves what "final disposition" in § 504 of the EAJA means and will not rely solely on one agency's interpretation of a general statute. This was the approach taken by the D.C. Circuit in the only case to squarely address the issue, *Adams v. SEC*, 287 F.3d 183 (D.C. Cir. 2002).

In *Adams*, the Court of Appeals for the D.C. Circuit faced a situation similar to ours. The petitioner, Adams, had filed his application for fees beyond the 30 days from a final disposition that was unappealable to him. Although the internal SEC regulations defined "final disposition" to mean final and unappealable, they had further interpreted "unappealable" to mean unappealable as to the particular party, not 30 days from the time at which the order became unappealable to anyone.[6] Thus, because Adams had prevailed at the agency level, he did not have the right to appeal and the 30-day period began immediately. The court framed Adams' argument as asking the court to hold that "regardless of whether the disposition giving rise to the EAJA fee is specifically appealable, the EAJA filing deadline

---

Commission within thirty days after such report by the administrative law judge, unless within such period any Commission member has directed that such report shall be reviewed by the Commission."

6. Unlike OSHA's guidelines, the SEC's regulations follow the Conference's model rules and define "final disposition" as "final and unappealable, both within the Commission and to the courts." 17 C.F.R. § 201.44. The Secretary argues that this distinction helps her case, but it does not. The EAJA is a general statute and its application should, for the most part, be consistent between agencies. That OHSA defines it differently than the SEC does not mean that OSHA is right. If anything, the disparity between interpretations highlights the ambiguity of the statute and the need to look to the policies underlying the EAJA for the proper construction.

should not expire in any case until 30 days after the time for appeal under the relevant law of appealability . . . has expired or the appeal has been completed." *Id.* at 184. After much discussion, the D.C. Circuit adopted the position that "final disposition" under § 504 of the EAJA means "final and unappealable" to all parties.

In looking at the issue, the court concluded that the case specific approach used by the SEC was unworkable and inconsistent with the purposes of the EAJA. The court first held "as a threshold matter that the meaning of 'final disposition' in § 504(a)(2) is ambiguous, but that Congress intended it to mean final and not appealable." *Id.* at 186. Finding no help from the statutory language or legislative history on the § 504 issue, the court turned to the previously discussed interpretation of "final judgment" under § 2412 for guidance. It gave two reasons for doing so: "first, the underlying concerns that led the courts of appeals (and ultimately Congress) to conclude that the 30-day deadline should not begin to run until the appeals process is completed are also relevant in the administrative context," and second, the court pointed out that "the Administrative Conference of the United States . . . has adopted EAJA regulations reflecting the clarification that Congress enacted in 1985 for EAJA requests in judicial proceedings." *Id.* at 186-87.

After discussing the history of § 2412, the D.C. Circuit noted only one change in the language of § 504 that might bear on this issue. Specifically, Congress added the section:

> When the United States appeals the underlying merits of an adversary adjudication, no decision on an application for fees and other expenses in connection with that adversary adjudication shall be made under this section until a final and unreviewable decision is rendered by the court on the appeal or until the underlying merits of the case have been finally determined pursuant to the appeal.

5 U.S.C. § 504(a)(2).[7] Faced with this provision, the court

---

7. The Secretary points out that OSHA adopted a regulation designed to implement this section. The text of that regulation provides:

evaluated the possible alternative interpretations of what Congress meant through the new language:

> [I]t can be read as presupposing the existence of a timely filed fee application, meaning that the fee application must be filed within 30 days of the final agency order, with the only restriction being that when the government files an appeal, the agency cannot act on the application until the appeal is completed; or, the language can be read as only reaffirming that no fees are appropriately awarded pursuant to § 504 until the government's efforts to appeal are completed, but leaving open the question of when a disposition is final for purposes of the commencement of the 30-day deadline.

*Adams*, 287 F.3d at 187-88. The D.C. Circuit adopted the latter construction, believing it to be more consistent with the notion that "the 30-day filing period is a time limit and not a window for filing, so that a fee applicant could file for fees before there were either a final disposition or a final judgment." *Id.* at 188 (citing S.Rep. No. 96-253, at 21 (1979); H.R.Rep. No. 96-1418, at 18 (1980), 1980 U.S.C.C.A.N. at 4984, 4997; H.R.Rep. No. 99-120, at 18 n.26, 1985 U.S.C.C.A.N. at 146 n.26.).

Because the amendment did not alter the time when the start of the 30-day period began to run, the court turned to the Seventh Circuit's reasoning in *McDonald* and noted

---

> If review of a Commission decision, or any item or items contained in that decision, is sought in the court of appeals under section 11 of the OSH Act, 29 U.S.C. 660, an application for an award filed with the Commission with regard to that decision shall be dismissed under 5 U.S.C. 554(c)(1) as to the item or items of which review is sought. If the petition for review in the court of appeals is thereafter withdrawn, the applicant may reinstate its application before the Commission within thirty days of the withdrawal.

29 C.F.R. § 2204.302(c). However, the logic used by the D.C. Circuit to explain § 504(a)(2) equally applies to this provision and suggests that the language here does not resolve the issue, but only addresses the situation where an application is filed prior to the Secretary's appeal. It does not set a time by which an application must be filed.

"four salient observations, all of which are applicable in agency as well as judicial proceedings." *Id.* First, the court pointed out that the government would not pay any fees until the expiration of the time limits for appeal. Second, it expressed concern that any other reading would result in the need to file multiple fee applications and that "it makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings." *Id.* (citation omitted). The court further supported this position by citing the Seventh Circuit's explanation that "giving the claimant a choice whether to ask for fees after he wins in the district court or after the appeal maximizes his welfare, at some cost perhaps to the courts but none we can think of to the executive branch" *Id.* (quoting *McDonald*, 726 F.2d at 314-15). Third, the D.C. Circuit accepted the proposition that judicial economy would not be harmed and explained that, in the agency proceedings:

> [W]e find no evidence that appellate economy warrants an earlier application deadline in light of the lost economy from multiple fee applications. Further, appellate economy is built into the statutory scheme for fees in administrative proceedings; §§ 504(c)(1) and 2412(d)(3) work in tandem so that the appeals court can award fees for both the agency and court proceedings.

*Id.* at 188-89. Fourth, the court noted the concern expressed by the Seventh Circuit that requiring early fee filing "delivers into the hands of the government a potent, acknowledged, and from the standpoint of the policy of [EAJA] perverse weapon for discouraging meritorious fee applications." *Id.* at 189 (quoting *McDonald*, 726 F.2d at 315). The D.C. Circuit found that "the possibility of such a dilemma would as a general matter appear no less likely when the government can appeal an administrative proceeding than in a judicial proceeding." *Id.*

Ultimately, the D.C. Circuit held that:

> § 504(a)(2) of EAJA is to be interpreted as creating a bright-line rule, discernible by looking at the category of order in question and the applicable law of

appealability. When a potential appeal exists under the relevant statute, the time for appeal must lapse, or the appeal be completed, before the 30-day deadline begins to run.

*Id.* at 191. Thus, the only other circuit to squarely address this question has found that the EAJA's "final disposition" should be interpreted as final and unappealable, where all rights to appeal must run before the start of the 30-day period for filing fees. Despite the difference in agencies, the reasoning of the D.C. Circuit is equally applicable in the context of OSHA's regulations.

The concerns expressed by this Court in *Taylor* and by the D.C. Circuit in *Adams* resonate here. Pursuant to the OSH Act, the Secretary had 60 days from September 4, 1998 to appeal the decision rendered in Scafar's favor. Under OSHA's interpretation of the EAJA, Scafar would have been required to file its application by October 4, 1998 —well before the time the Secretary had to file her appeal— thus "deliver[ing] into the hands of the government a potent, acknowledged, and from the standpoint of the policy of the [EAJA] perverse weapon for discouraging meritorious fee applications." *Adams*, 287 F.3d at 189 (quoting *McDonald*, 726 F.2d at 315). Further, under OSHA's interpretation of "final disposition," the required, initial application for fees filed with the agency would always be dismissed when the Secretary appeals—necessitating the filing of a second application whether or not this Court reaches the merits of the appeal. This interpretation would require multiple fee applications, resulting in "unnecessary fragmentation of fee petitions and the waste of judicial resources that would be caused by filing petitions for fees in cases that are ultimately reversed or remanded." *Taylor*, 749 F.2d at 173.

## IV.   Conclusion

Under the Secretary's interpretation, a prevailing party would face multiple deadlines and multiple applications, while providing the Secretary with an incentive to appeal the merits, even with minor awards, because of the fees requested. This proposed construction would breathe life

into the hypothetical problems and concerns earlier expressed by this Court and others over the proper interpretation of § 2412's "final judgment" in the context of § 504. We decline to adopt the Secretary's interpretation.

We hold that a prevailing party will have 30 days following the expiration of the time for the Secretary to appeal a decision on the merits to file its fee application under 5 U.S.C. § 504. If the Secretary appeals to our Court, the fees for the civil action, as well as the fees in the agency adjudication, can be sought within 30 days following a "final judgment" as defined in § 2412. Thus, the merits of the case will be determined before the application for fees is filed, obviating the need for more than one application or deadline. This simple procedure better comports with the intent of the EAJA to provide fees and expenses to people who are forced to face potential fines and sanctions by unjustified government action. This construction also creates continuity within the EAJA by aligning the meaning of the term "final disposition" in § 504 with its counterpart in § 2412.

## V.

For the foregoing reasons, we reverse the order of the Commission. Fees and expenses incurred in all previous proceedings may be applied for pursuant to 28 U.S.C. § 2412.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*