PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1021
_____

JOHN D. HANDRON, Ph. D.,
                    Appellant

v.

SECRETARY DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
c/o General Counsel Dept of Health
and Human Services
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-08-cv-03119)
District Judge: Honorable Robert B. Kugler
_____

Argued January 11, 2012

Before:  SCIRICA, RENDELL and SMITH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: April 20, 2012)
_____

John D. Handron, Ph. D.
21 Shadow Lane
Cape May Courthouse, NJ 08210
    *Pro se Appellant*

James B. Clark, III. Esq.
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Rachel H. Park, Esq.   **[ARGUED]**
U.S. Department of Health
& Human Services
Office of General Counsel
26 Federal Plaza
New York, NY 10278
    *Counsel for Appellee*

David M. Laigaie, Esq.   **[ARGUED]**
Dilworth Paxson
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
    *Counsel for Amicus Appellant*
    *Court Appointed Amicus Curiae*

———————

OPINION OF THE COURT

———————

RENDELL, <u>Circuit Judge</u>.

Dr. John Handron, a psychologist, appeals from the denial of his request for counsel fees following his challenge

to the government's claim that he had overbilled Medicare and owed the government more than $600,000 in overpayments. At an ALJ hearing to contest the government's claim, Dr. Handron presented extensive evidence, but the government neither appeared nor presented argument or advocacy, either written or in person. The ALJ concluded that the overpayment was actually $5,434.48. Dr. Handron then moved, pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504(a)(1), to recoup the tens of thousands of dollars in attorneys' fees and expenses he incurred in fighting the overpayment demand. His request for fees was denied by an administrative appeals council and the District Court based on their conclusion that the hearing before the ALJ was not an "adversary adjudication," as is required for an award of fees under the EAJA.

While we sympathize with Dr. Handron's plight, we are constrained to agree with the determination that, given the statutory definition of an "adversary adjudication," his request was properly denied. At the same time, we disagree with the District Court's ruling that the mere fact that the government did not appear in person at the hearing was a sufficient basis upon which to conclude that the adjudication was not adversary in nature.

## I.

### a. The EAJA

The EAJA was passed, in large part, to allow individuals and small businesses to fight back against unjustified government action, without fear that the high cost of doing so would make victory ultimately more expensive than acquiescence. H.R. Rep. No. 96-1418, at 5-6 (1980),

3

*reprinted in* 1980 U.S.C.C.A.N. 4984; John J. Sullivan, Note, *The Equal Access to Justice Act in the Federal Courts*, 84 Colum. L. Rev. 1089, 1092-93 (1984). It empowers parties who prevail against the government, either in an administrative proceeding or in a civil action, to collect their fees and other expenses from the government. 5 U.S.C. § 504(a)(1)[1]; 28 U.S.C. § 2412(d)(1)(A)[2]. However, Congress

---

[1] That sub-section reads, in relevant part, as follows:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).

[2] That sub-section provides:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

placed several limitations on a party's ability to recover fees under the EAJA. Relevant here, parties who prevail against the government in an agency proceeding can only collect their fees under the EAJA if the proceeding was an "adversary adjudication." 5 U.S.C. § 504(a)(1). An "adversary adjudication" is defined, in relevant part, as "an adjudication under section 554 of [Title 5, United States Code] in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C).

The House Report for the bill makes clear that the adversary adjudication requirement was designed, in part, to "narrow the scope of the bill in order to make its costs acceptable." H.R. Rep. No. 96-1418, at 14, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4993; *see also id.* at 20, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4999 ("[T]he Committee has eliminated non-adversary adjudications (including administrative proceedings under the Social Security Act) from the coverage of the principal part of this bill, and believes that is a significant factor in reducing the cost."). That report also commented that "[i]t is basic fairness that the United States not be liable in an administrative proceeding in which its interests are not represented." *Id.* at 12, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4991. The Conference Report for the bill stated that the definition of "adversary adjudication" was intended to "preclude[] an award in a situation where an agency, e.g., the Social Security Administration, does not take a position in the adjudication." H.R. Conf. Rep. 96-1434, at 23 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5003, 5012.

In 1985, when Congress reauthorized[3] and amended the EAJA, it reaffirmed the adversary adjudication requirement. The House report noted the following:

> One issue which needs clarification is what coverage, if any, is allowed under the Equal Access to Justice Act for Social Security Administration hearings at the administrative level. As enacted in 1980, the Act covers "adversary adjudications"—i.e., an adjudication under Section 554 of Title 5, United States Code "in which the position of the United States is *represented by counsel* or otherwise." While this language generally excludes Social Security Administrative hearings from the Act, Congress made clear in 1980 that "If * * * the agency does take a position at some point in the adjudication, the adjudication would then become adversarial," and thus be subject to the Act. It is the committee's understanding that the Secretary of Health and Human Services has implemented an experiment in five locations in which the Secretary is represented at the hearing before the administrative law judge. This is precisely the type of situation covered by section 504(b)(1)(C). While, generally, Social Security administrative hearings remain outside the scope of this statute, those in which

---

[3] The EAJA as originally passed included a sunset provision. In 1985, Congress repealed the sunset provision and made the EAJA permanent. *See* H.R. Rep. No. 99-120, at 20-21, 29 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 149.

the Secretary is represented are covered by the Act.

H.R. Rep. No. 99-120, at 10 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 138-39 (quoting H.R. Conf. Rep. 96-1434, at 23, *reprinted in* 1980 U.S.C.C.A.N. 5003, 5012) (emphasis and ellipsis in original).

The EAJA also tasked the Administrative Conference of the United States with interpreting the statute and developing model rules. *See Scafar Contracting, Inc. v. Sec'y of Labor*, 325 F.3d 422, 428 n.4 (3d Cir. 2003); 5 U.S.C. § 504(c)(1) ("After consultation with the Chairman of the Administrative Conference of the United States, each agency shall by rule establish uniform procedures for the submission and consideration of applications for an award of fees and other expenses."). The Administrative Conference's model rule implementing 5 U.S.C. § 504 states that an agency proceeding is an "adversary adjudication" under the EAJA if "the position of this or any other agency of the United States, or any component of any agency, is presented by an attorney or other representative who enters an appearance and participates in the proceeding." 46 Fed. Reg. 32,900, 32,912 (June 25, 1981). The Department of Health and Human Services ("HHS") adopted that model rule in substantially similar form when it promulgated regulations. 45 C.F.R. § 13.3(a).[4]

---

[4] That provision reads as follows:

These rules apply only to adversary adjudications. For the purpose of these rules, only an adjudication required to be under 5 U.S.C. 554, in which the position of the

7

HHS has also adopted regulations defining when the government—through the Centers for Medicare and Medicaid Services ("CMS") or one of its contractors—may participate in an ALJ hearing. Participation is specifically defined and "may include filing position papers or providing testimony to clarify factual or policy issues in a case." 42 C.F.R. § 405.1010(c). The regulations permit the ALJ to "request" such participation, but the ALJ "may not require" it. *Id.* § 405.1010(a). Even if CMS or its contractors do participate, they may not be called as witnesses during the hearing. *Id.* § 405.1010(d).

### b. Dr. Handron's case

Dr. Handron participated in the Medicare Part B program, treating nursing home patients and receiving reimbursement payments from Medicare. In August 2003, he received a letter from Empire Medicare Services, on CMS letterhead, informing him that he had been overpaid from the Medicare program in the amount of $604,038. The letter

---

Department or one of its components is represented by an attorney or other representative ("the agency's litigating party") who enters an appearance and participates in the proceeding, constitutes an adversary adjudication. These rules do not apply to proceedings for the purpose of establishing or fixing a rate or for the purpose of granting, denying, or renewing a license.

45 C.F.R. § 13.3(a).

stated that the "overpayment occurred because documentation did not support the services billed." (A100.)

The letter was sent after an extensive review of Dr. Handron's requests for reimbursement from Medicare. Jana Clark, a nurse working for Eastern Benefits Integrity Center ("EA-BISC"), a government contractor, reviewed a sample of Dr. Handron's Medicare claims from November 1994 to January 2001 to determine whether payments made to him were appropriate given the documents supporting his bills. Clark prepared a 64-page spreadsheet listing the more than 2,500 claims she reviewed. She assigned each claim one or more of fourteen codes, each of which represented a decision either to allow or deny a claim, along with a brief explanation of the reason for denial. Clark explained the codes' meaning in a two-page printed legend. EA-BISC determined from this audit that Medicare overpaid Dr. Handron by $125,696.71 for the claims Clark reviewed. It was extrapolated from that sample that Medicare had overpaid Dr. Handron by a total of $604,038 over his entire claims history.

Dr. Handron hired a lawyer and challenged the government's accusation. He first filed an administrative appeal, and a Fair Hearing Officer largely upheld the government's overpayment determination. He then requested a hearing before an ALJ pursuant to 42 C.F.R. § 405.1002(a), which took place on June 21-22 and July 24, 2007. Dr. Handron appeared at this hearing along with his attorney, and he testified on his own behalf. Dr. Handron also presented expert testimony from Christopher Barbrack, a psychologist, concerning the provision and documentation of psychological services. The ALJ requested that CMS or one of its contractors appear as a non-party participant in the hearing, but no one filed a brief or sent a representative to the hearing

on behalf of the government. CMS did, however, provide the ALJ with documents he requested to explain the procedure its consultants used to sample Dr. Handron's claims and extrapolate findings therefrom.

The ALJ reviewed Clark's spreadsheet and legend, which detailed the claims that EA-BISC reviewed and explained the reasons EA-BISC felt the claims should be disallowed. Also before the ALJ were twenty-five boxes of medical records from Dr. Handron's treatment of Medicare patients.

The ALJ slashed the government's overpayment request, determining that the overpayment to Dr. Handron was actually only $5,434.48. He found that EA-BISC failed to meet its burden of establishing an overpayment as to some of the claims and that some of the claims were outside of the limitations period for an overpayment action. He then examined each of Clark's fourteen codes and analyzed whether EA-BISC had met its burden of showing that each claim in its sample should be disallowed. Of the $125,696.71 of supposed overpayments that EA-BISC found in the sample claims, the ALJ found that only $5,434.48 was properly deemed overpayment. As to EA-BISC's "extrapolation" from the claims sample it reviewed, the ALJ sought input from an expert statistician, who concluded that the sampling was skewed against Dr. Handron in a way that exaggerated the extent of any overpayment indicated by the sample. Accordingly, the ALJ held that "the sampling procedures followed by EA-BISC in this case were unreliable and that the resultant extrapolation is invalid." (A80.) Therefore, the ALJ held that only the $5,434.48 of overpayment he found warranted in EA-BISC's sample of claims could be charged to Dr. Handron.

Dr. Handron thereafter filed an application pursuant to the EAJA, 5 U.S.C. § 504, to collect from HHS the attorneys' fees and expenses he incurred in presenting his case against the overcharge claim. The ALJ denied this application, holding that the position of the government was not represented at the hearing and that, therefore, Dr. Handron did not qualify for fee reimbursement under the EAJA. Dr. Handron appealed the ALJ's decision regarding fees to HHS's Medicare Appeal Council ("MAC"), which adopted the ALJ's decision denying an EAJA fee award.

In June 2008, Dr. Handron filed a complaint in the District Court for the District of New Jersey appealing MAC's decision disallowing EAJA fees. He moved for summary judgment in March 2009. The District Court denied Dr. Handron's motion and affirmed MAC's denial of EAJA fees. *Handron v. Sebelius*, 669 F. Supp. 2d 490, 501 (D.N.J. 2009).

Recognizing that the government's position was not represented at the ALJ hearing "by counsel," the District Court examined the meaning of the words "or otherwise" in the EAJA's definition of an adversary adjudication, 5 U.S.C. § 504(b)(1)(C), and found the statutory language ambiguous. 669 F. Supp. 2d at 495. The District Court then looked to the statute's legislative history and concluded that "Congress did not intend that the EAJA would apply simply because a person was fighting adverse government action[;] rather[,] Congress only intended that the EAJA would apply when the government participated in the proceeding." *Id.* at 496. The District Court examined out-of-circuit case law and found that it supported the position that a person representing the government must physically appear at the hearing for it to constitute an adversary adjudication under the EAJA. *Id.* at

11

497-99. The District Court found further support for its conclusion in the Administrative Conference's model rules, which state that a proceeding is adversarial if a government representative enters an appearance and participates in the proceeding. *Id.* at 499-500 (citing 46 Fed. Reg. 32,900, 32,912). Finally, the District Court reviewed the statute and concluded that "[t]he word 'represented' in [the] context of being coupled with 'by counsel' suggests that the statute requires some level of advocacy." *Id.* at 500. The District Court then stated that "[a]dvocacy, in turn, in the context of a live adjudication seems to impart some modicum of real-time interplay with the fact-finder." *Id.* Since the government did not send someone to physically represent it at Dr. Handron's ALJ hearing, the District Court concluded that the EAJA did not apply to his case. It therefore denied Dr. Handron's motion for summary judgment and dismissed his case.

Dr. Handron appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's interpretation of the EAJA is plenary. *Kadelski v. Sullivan*, 30 F.3d 399, 400 (3d Cir. 1994).

## II.

### a.

We begin by asking whether the District Court was correct in concluding that an agency hearing is not an "adversary adjudication" under the EAJA unless an individual representing the government appears at the proceeding in person. We believe this is a misreading of the statute.

Nothing in the plain text of the statute supports the specific meaning that the District Court and the government attribute to the words "represented by counsel or otherwise" in 5 U.S.C. § 504(b)(1)(C). To "represent" means to "stand[]

for or act[] on behalf of another, esp. by a lawyer on behalf of a client." Black's Law Dictionary 1416 (9th ed. 2009). And "otherwise" is an open-ended term, meaning "in a different way or manner." *Begay v. United States*, 553 U.S. 137, 144 (2008) (citing Webster's Third New International Dictionary 1598 (1961)); *id.* at 151 (Scalia, J., concurring) (citing Webster's New International Dictionary 1729 (2d ed. 1957)). Congress did not specify in what way or manner the position of the United States could be represented, other than by counsel, and still implicate the EAJA.

If Congress wanted to limit the EAJA's applicability to cases in which an individual representing the government physically appeared at an agency proceeding, it could have so stated. The statute does not say that the government's position must be represented "by counsel or other *individual appearing on its behalf*." Such language would indicate the necessity of the actual presence at the hearing of someone representing the government, but that was not the language Congress chose.

Instead, Congress chose language that left open the possibility that the government's position could be represented in some other manner and by someone other than a lawyer. This indicates Congress's recognition that the position of the United States can be represented in many ways and its desire to grant judges some discretion in determining whether particular action "represents" the government's position. It does not suggest that the government's position can only be represented at a hearing if a government representative physically stands before the decision-maker. Moreover, the fact that the statute speaks of the government's *position* being represented, rather than the government itself, further suggests that a physical appearance at an agency

13

hearing is not necessary to implicate the EAJA. While we speak of people being represented as meaning that they have advocates acting on their behalf, "[t]o represent a thing is to produce it publicly." Black's Law Dictionary 1301 (6th ed. 1990). That production can be as part of a public record, and need not be in person.

Accordingly, we have little doubt that some forms of written advocacy submitted to an ALJ can constitute a representation of the government's position, so as to make an agency proceeding an "adversary adjudication" for purposes of the EAJA. A written statement is often an effective way to advocate one's position. We frequently decide cases in which the parties' respective positions are represented solely by written submissions. *See* 3d Cir. L.A.R. 34.1(a) (2011). While the appearance of an individual at a hearing will raise the level of advocacy for a given position, this does not mean that a position cannot be represented at a proceeding unless an individual is there to espouse the position.

The government argues that the out-of-circuit case law on which the District Court relied refutes the argument that the position of the government can be represented by a writing. We disagree. The government cites to *Willis v. Sullivan*, 931 F.2d 390 (6th Cir. 1991) and *Rowell v. Sullivan*, 813 F. Supp. 78 (D.D.C. 1993). Neither case stands for the broad proposition the government claims.

In *Willis*, a plaintiff argued that her disability proceedings were adversarial because the HHS Secretary's counsel "responded by letter denying her request for answers to interrogatories and motions to produce" such that "the Secretary, in essence, was represented by counsel during the administrative proceedings on her disability claim." 931 F.2d at 400. The Sixth Circuit Court of Appeals rejected that

14

argument, saying that the government's letter refusing to give substantive responses to the plaintiff's discovery requests "[did] not amount to the Secretary taking a position represented by counsel during the administrative phase of Willis' disability claim." *Id.* This was not a rejection of the principle that a writing could serve to represent the government's position. Rather, it was a straightforward recognition that a written refusal to respond substantively to discovery requests is not a representation of the government's position in the underlying matter sufficient to invoke the EAJA.

Similarly, *Rowell* does not support the government's sweeping position that the position of the United States can never be represented by a writing. In that case, an ALJ, Rowell, was under investigation by an HHS panel for potential bias. 813 F. Supp. at 79. Rowell wrote to the panel that was investigating him and requested that sanctions be levied against certain attorneys—a matter distinct from the panel's investigation. *Id.* at 81. An HHS attorney replied in writing to Rowell's request. *Id.* Rowell later pointed to this letter as an indication that the panel proceeding was an adversary adjudication and that he was entitled to attorneys' fees under the EAJA. *Id.* The district court rejected this argument, saying that the HHS attorneys' letter simply informed Rowell that the agency would not initiate the ancillary sanction proceedings Rowell requested, and that this did not constitute representation of the agency's position in the panel investigation of Rowell's alleged bias. *Id.* This was not a sweeping proclamation that a writing can never represent the government's position, but, rather, was another example in which a writing was not *sufficient* to constitute a representation of the government's position.

The government urges that we should defer to the rule that HHS has adopted, which dictates that an administrative proceeding is not an adversary adjudication unless a representative of the government enters an appearance and participates in the proceeding. We have said that the Administrative Conference's model rules related to the EAJA—upon which HHS's rule is modeled—are entitled to "some deference." *Scafar*, 325 F.3d at 428 n.4. However, we have never said that we give the model rules the kind of strong deference described in *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984). Instead, we have only stated that the Administrative Conference's model rules are entitled to some deference under the principles of *Skidmore v. Swift & Co.*, pursuant to which an agency's regulations are "not controlling upon the courts . . . [but] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." 323 U.S. 134, 140 (1944). Exercising *Skidmore* deference, a court gives the agency action weight according to "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*

The Administrative Conference gave no explanation whatsoever as to why it interpreted the statutory language "represented by counsel or otherwise" to mean that an individual must enter an appearance and participate in the proceeding. 46 Fed. Reg. 32,900, 32,912; *see Handron*, 669 F. Supp. 2d at 499 (recognizing that the Administrative Conference gave scant attention to the meaning of "or otherwise"). To the extent that the Administrative Conference's model rule can be interpreted to require a representative of the government to physically appear at the

16

hearing, the reason for that interpretation was not explained, it has no inherent persuasive power, and it thus is entitled to no deference under *Skidmore*.[5]  Therefore, we find the government's argument unavailing.

In sum, we disagree with the District Court's conclusion that a human presence at the agency hearing is necessary for the government's position to be represented therein.  We believe that a writing can represent the government's position and therefore bring a proceeding under the ambit of the EAJA.

**b.**

Having concluded that a writing can, in certain instances, render an administrative hearing an adversary adjudication under the EAJA, we now ask whether the written materials to which Dr. Handron points—the demand letter, the Fair Hearing Officer's decision, the boxes of medical records, and Nurse Clark's spreadsheet and legend—rendered his ALJ hearing an adversary adjudication under 5 U.S.C. § 504.  We find that they do not.

---

[5] HHS's rule does not, on its face, require that an individual physically appear at the proceeding for it to be considered an adversary adjudication.  It only requires that the agency's position be represented by an attorney or other representative who enters an appearance and participates in the proceeding.  45 C.F.R. § 13.3(a).  We pause to note the inconsistency between a requirement that the government have a physical presence at the hearing in order for its position to be represented and the agency's own regulations, which define "participation" in a proceeding to include the filing of written position papers.  42 C.F.R. § 405.1010(c).

Congress defined an "adversary adjudication" as requiring that "the position of the United States [be] represented by counsel or otherwise." 5 U.S.C. § 504(b)(1)(C). In determining the meaning of the words "or otherwise," we are aided by principles of statutory interpretation. The interpretive canon of *ejusdem generis* "limits general terms which follow specific ones to matters similar to those specified." *Gooch v. United States*, 297 U.S. 124, 128 (1936); *see also United States v. Winebarger*, 664 F.3d 388, 394 (3d Cir. 2011) (applying canon of *ejusdem generis*). Similarly, under the maxim *noscitur a socciis*, the meaning of a word is informed by the words that accompany it in the statute. *Singh v. Ashcroft*, 383 F.3d 144, 164 & n.14 (3d Cir. 2004). Following these principles, we must read "otherwise" to mean that the government's position is represented in a manner akin to the representation counsel would provide. *See Pollgreen v. Morris*, 911 F.2d 527, 533 (11th Cir. 1990) (reading "otherwise" in the context of § 504(b)(1)(C) to require representation akin to that provided by counsel).[6] This involves a minimum level of purposeful

---

[6] The *Pollgreen* court stated that "[t]he word 'otherwise' is more appropriately read in the context of the entire clause to refer to an individual who represents the position of the United States in a manner similar to that of counsel." 911 F.2d at 533. That court confronted an argument that a government investigator who initiated an administrative process had represented the government's position. *Id.* It did not deal with the question we face here, whether a writing can represent the government's position at a hearing and thereby make the proceeding adversarial. We therefore believe that the *Pollgreen* court's reference to an "individual" was not a statement that such individual must personally appear at a

18

advocacy of a legal position directed at the decision-maker. Like the writings in *Willis* and *Rowell*, the writings to which Dr. Handron points do not reflect that kind of purposeful advocacy and therefore do not implicate the EAJA. *Willis*, 931 F.2d at 400 (holding that the government's written response to Willis "[did] not amount to the Secretary taking a position represented by counsel during the administrative phase of Willis' disability claim"); *Rowell*, 813 F. Supp. at 81 (holding that government writing did not represent the government's position). Here, the government did not take any action to advocate for, or urge, its position before the ALJ. It filed no brief, gave no statement, and expressed no position, in writing or in person.

Of course, the government's position—that Dr. Handron had been overpaid hundreds of thousands of dollars—was put before the ALJ in this case, but that does not mean that it was "represented" at the hearing in a manner akin to the representation counsel would provide. Whenever there is an administrative proceeding of this sort, it will be because the government took some kind of position, like denying disability benefits to an individual or determining that excess benefits have been paid to a beneficiary. The fact that the government previously took a position (and committed it to writing) cannot mean that any time such position is appealed, the subsequent proceeding implicates the EAJA merely because the writing is presented to the ALJ. Surely, the "adjudication" in connection with which the position must be represented is the actual § 554 proceeding.

---

hearing for it to be an adversary adjudication or that the government's position cannot be represented by a writing.

While it may seem strange to make eligibility for fee reimbursement contingent on whether or not the government decides to urge its position, this was clearly the result Congress intended in order to give the government some control over its costs. The EAJA's legislative history indicates that, though Congress was concerned with evening the playing field for those who might not otherwise be able to fight unjustified government action, it was also concerned about the public fisc. It limited the EAJA's applicability in the administrative context to "adversary adjudication[s]" and excluded Social Security proceedings in an effort to reduce the statute's costs. *See* H.R. Rep. No. 96-1418, at 14, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4993 (noting that part of the reason the Act "covers only adversary adjudications under 554 of title 5" is a "desire to narrow the scope of the bill in order to make its costs acceptable"); *id.* at 20, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4999 ("[T]he Committee has eliminated non-adversary adjudications (including administrative proceedings under the Social Security Act) from the coverage of the principal part of this bill, and believes that is a significant factor in reducing the cost."); H.R. Rep. No. 99-120, at 10, *reprinted in* 1985 U.S.C.C.A.N. 132, 138-39 ("While, generally, Social Security administrative hearings remain outside the scope of this statute, those in which the Secretary is represented are covered by the Act."); *see also* H.R. Rep. No. 96-1418, at 12, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4991 ("It is basic fairness that the United States not be liable in an administrative proceeding in which its interests are not represented."). This history makes clear that Congress intended to allow the government to avoid taking a position in certain administrative proceedings and thereby not subject itself to possible liability for attorneys' fees under the EAJA.

That is exactly what happened here. The government did not file a brief with the ALJ, let alone make an appearance to urge that its position be adopted. While the government did provide the ALJ with a description of the statistical methodology it used to arrive at its figure, this did not rise to the level of purposeful advocacy directed at the decision-maker that would render Dr. Handron's hearing an adversary adjudication under the EAJA. *See Pollgreen*, 911 F.2d at 533. Therefore, although we disagree with the test the District Court applied, we agree with its conclusion that Dr. Handron's ALJ hearing was not an adversary adjudication and that he is not entitled to collect his fees under the EAJA.

## III.

While we conclude from the statutory language and legislative history that Dr. Handron's ALJ proceeding was not an adversary adjudication, we wonder if, given the context in which the EAJA was passed, Congress really would intend this result in today's world. As noted above, Congress wanted to make clear that Social Security administrative proceedings are not adversary adjudications unless the government is represented at the hearings. H.R. Rep. No. 96-1418, at 20, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4999; H.R. Conf. Rep. 96-1434, at 23, *reprinted in* 1980 U.S.C.C.A.N. 5003, 5012 (remarking that the definition of "adversary adjudication" was intended to "preclude[] an award in a situation where an agency, e.g., the Social Security Administration, does not take a position in the adjudication"); H.R. Rep. No. 99-120, at 10, *reprinted in* 1985 U.S.C.C.A.N. 132, 138-39. Congress has never indicated that overpayment hearings are to be treated any differently from hearings concerning Social Security eligibility, leading us to the conclusion that Dr. Handron's ALJ hearing—like Social

21

Security hearings in which the government makes no attempt to advocate its position directly to the decision-maker—does not fit the statutory definition of adversary adjudication. However, there are differences between the two types of hearings. While it seems fair that a Social Security claimant should have to prove his case, and the government can decide not to contest it, we wonder if it is equally fair that someone in Dr. Handron's position has to essentially disprove the government's case, with the government choosing not to put forth its position. Even though the government's position was not "represented" at the hearing, Dr. Handron effectively had to rebut that position in order to prevail. As Dr. Handron notes, his case strongly resembles many of the circumstances that prompted Congress to pass the EAJA. *See generally Award of Attorneys Fees Against the Federal Government: Hearings Before the Subcommittee on Courts, Civil Liberties and the Administration of Justice of the Committee on the Judiciary of the House of Representatives*, 96th Cong. (1980) (Serial No. 62). He was forced to go to great lengths and incur significant expense to combat a government allegation that would have been potentially ruinous for him financially. The fact that the government did not advocate for its position before the ALJ may have made his challenge slightly easier to win, but merely by taking the position initially, the government all but ensured that Dr. Handron would have to fight tooth and nail—at substantial financial cost—to be vindicated. To the extent that one of the objectives of the EAJA was to ensure that private parties are able to fight unjustified government actions, that objective was implicated in Dr. Handron's case.

Although we understand Congress's desire to control costs, we do not believe that allowing an individual like Dr. Handron to satisfy the "adversary adjudication" prong of the

EAJA test would open the floodgates to fee awards. The government's financial interests are additionally protected by the statutory scheme that provides that, even if the government loses in an "adversary adjudication," it will not have to pay EAJA fees if it can show that its position was "substantially justified" or if "special circumstances make an award unjust." 5 U.S.C. § 504(a)(1). These statutory provisions provide additional protection for the government based on the unique circumstances of the case.

Congress has previously amended the EAJA to broaden the scope of the EAJA's application in response to judicial interpretation of the statute. For instance, after courts interpreted the "position of the United States" narrowly to include only the position taken by the government in litigation, Congress responded by amending the statute to define that statutory language more broadly. *See* Act of Aug. 5, 1985, Pub. L. 99-80, § 2(c)(2)(B), 99 Stat. 183 (codified at 28 U.S.C. § 2412(d)(2)(D)); H.R. Rep. No. 99-120, at 11-12, *reprinted in* 1985 U.S.C.C.A.N. 132, 139-40 (explicitly repudiating the holdings in *Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C. Cir. 1983) and *Del Mfg'r Co. v. United States*, 723 F.2d 980 (D.C. Cir. 1983)).[7]

---

[7] A parallel provision, enacted in the same bill, broadly defined the statutory language "position of the agency." *See* Act of Aug. 5, 1985, Pub. L. 99-80, § 1(c)(3), 99 Stat. 183 (codified at 5 U.S.C. § 504(b)(1)(E)). This amendment, however, offers no comfort to those who are forced to fight the government in an agency proceeding at which the government makes no effort to advocate to the decision-maker in support of its position. Such a circumstance would still not be considered an adversary adjudication, a

Given Congress's rationale in passing the EAJA, we wonder whether, with the complex and burdensome battle that doctors may have to wage in order to vindicate their rights when accused of overbilling the government, Congress might consider amending the EAJA so that persons in Dr. Handron's position are not disadvantaged by the government's decision not to represent its position in proceedings before ALJs. We leave this policy consideration to the lawmakers in Washington, should they wish to entertain it.

## IV.

In conclusion, unlike the District Court, we do not believe that an adversary adjudication under 5 U.S.C. § 504(a)(1) requires the government to send a human being to the relevant agency proceeding. Rather, we hold that an adversary adjudication under 5 U.S.C. § 504(a)(1) requires that the government direct some purposeful advocacy at the decision-maker, whether written or in person. That requirement was not met in this case. We will therefore affirm.

---

prerequisite to recovery under § 504 that Congress expressly reaffirmed in 1985. H.R. Rep. No. 99-120, at 10, *reprinted in* 1985 U.S.C.C.A.N. 132, 138-39.